ELLEN RYAN *vs.* THE WORLD MUTUAL LIFE INSURANCE COMPANY.

An agent of a life insurance company, whose authority was limited to receiving and forwarding applications and countersigning and delivering policies approved by the company and collecting premiums, fraudulently put down answers to interrogatories in an application which were untrue in themselves and were not the answers given by the applicant, which application the applicant signed without reading. The interrogatories were upon points material to the risk, and it was made an express condition of the policy that the statements of the application were true. Held that the company was not bound by a policy issued upon the application.

Courts should never extend by implication the power of an agent, except to carry into effect the probable intention of the parties, or to prevent third persons dealing with the agent from being misled to their injury.

And it will not be extended to an act done by the agent in fraud of the principal and for the benefit of the insured, especially where it is in the power of the insured by the use of reasonable diligence to defeat the fraudulent intent.

The signing of an application without reading it or hearing it read, is inexcusable negligence. A party is bound to know what he signs.

The statements in such an application are warranties.

A waiver of objection to misstatements in such an application can be made only by an agent of the company fully authorized to make it.

ASSUMPSIT on a policy of insurance on the life of Patrick Ryan, for the benefit of the plaintiff; brought to the Superior Court in New London County, and tried to the jury before *Foster, J.* Verdict for the plaintiff, and motion for a new trial by the defendants for error in the rulings of the court and on the ground that the verdict was against the evidence. The case is sufficiently stated in the opinion.

*W. P. Prentice*, of New York, and *S. C. Dunham*, in support of the motion.

*Pratt* and *Ripley*, contra.

CARPENTER, J. This is an action on a policy of life insurance. The policy is expressed to be " in consideration of the representations, declarations and covenants contained in the application therefor, to which reference is here made as a part of this contract, &c." It is further declared that " This policy is issued and accepted on the following express conditions and agreements: First. That the statements and declarations made in the application therefor, and on the faith of which it is issued, are in all respects true, &c." The application therefore is a part of the policy; and the plaintiff's agreements therein contained are warranties, and, if not true, she cannot recover, unless there has been a waiver by the defendants, or under the circumstances they are estopped from denying their truth.

In the application are the following questions and answers: " 12. Has the party ever had any of the following diseases "—(naming a long list of diseases, and among them,) " bronchitis, consumption, spitting of blood, or any serious disease ? "—" None of these."

" 17. Has the party had during the last seven years any severe sickness or disease ? If so, state the particulars, and the name of the attending physician who was consulted and prescribed."—" No."

" 25. Has the party employed or consulted any physician ? Please answer this yes or no. If yes, give name or names and residence."—" No."

" 27. Has any previous examination or application been made for assurance on the life proposed ?"—" No."

" Has any company declined to issue a policy for the party ?"—" No."

Upon the trial the plaintiff offered to prove, not that the above answers were true, but that different answers were in fact given, both by herself and the insured, and that the

answers were wrongly written by the local agent of the defendants without the knowledge or consent of the plaintiff or her husband. Aside from the claim that the defendants are responsible for the conduct of their local agent, this is merely an attempt to substitute for a part of the written contract declared on, a different parol contract; for the representations and warranties of the plaintiff contained in the written agreement, oral representations and warranties of an entirely different character. It requires no argument to show that this cannot be done.

But the plaintiff claims that truthful answers having been given to each interrogatory, and the incorrect answers contained in the application being there by the sole act of the agent, the defendants are bound by the answers as written, and are precluded from denying their truth. Whether this is so or not depends upon the extent of the agent's authority.

It must be admitted that the express authority of the agent was limited to receiving the application, forwarding it to the home office, receiving, countersigning and delivering the policy, and collecting the premiums. The courts in this state have construed the powers of these agents liberally, and extended them somewhat by implication. Thus it has been held that in writing the application, and explaining the interrogatories and the meaning of the terms used, he is to be regarded as the agent of the company. In *The Union Mutual Ins. Co.* v. *Wilkinson*, 13 Wallace, 222, it was held, where an agent by mistake, or acting upon information derived from others which proved to be incorrect, inserted an answer not true in fact, that it was the act of the insurers and not of the insured.

In this case we are asked to go further than any case has yet gone, and clothe the agent with an authority not given him in fact, and to hold the principal responsible for an act which could not by any possibility have been contemplated as being within the scope of the agency. In most, if not in all, of the cases in which the act of the agent has been regarded as the act of the principal, the act has been the natural and probable result of the relations existing between the parties,

or so connected with other acts expressly authorized as to afford a reasonable presumption that the principal intended to authorize it.    But it cannot be supposed that these defendants intended to clothe this agent with authority to perpetrate a fraud upon themselves.    That he deliberately intended to defraud them is manifest.    He well knew that if correct answers were given no policy would issue.    Prompted by some motive he sought to obtain a policy by means of false answers.    His duty required him not only to write the answers truly as given by the applicant, but also to communicate to his principal any other fact material to the risk which might come to his knowledge from any other source. His conduct, in this case, was a gross violation of duty, in fraud of his principal, and in the interest of the other party. To hold the principal responsible for his acts, and assist in the consummation of the fraud, would be monstrous injustice. When an agent is apparently acting for his principal, but is really acting for himself, or third persons, and against his principal, there is no agency in respect to that transaction, at least as between the agent himself or the person for whom he is really acting and the principal.

The principal reason urged for holding the defendants liable in this case is the one suggested in the argument, that when one of two innocent persons must suffer by the fraud, negligence or unauthorized act of a third, he who clothed the third with the power to deceive or injure must be the one.

Our answer is, in the first place, that this is not exactly a case in which one of two innocent persons must necessarily suffer.    There is no absolute loss for us to determine on whom it shall fall.    If the plaintiff fails to recover she sustains no pecuniary loss, except the premium paid, nor that even if she is innocent and the law is so that she can recover it back on the ground that there was a failure of consideration.    It is unlike a case of fire insurance.    Nearly all property may be insured at some rate, if not in one office in another.    But in this case the plaintiff's husband was not an insurable subject.    His situation was such that one

company had rejected him, and but for the aid of fraud neither this nor any other company would have accepted him. Had the truth been stated no policy would have issued, and as she would have had no better success probably with other companies we cannot see that she has been misled to her prejudice except in relation to the premium, which is comparatively a small matter.

In the second place, if the rule is to be applied to this case it is by no means certain that it will aid the plaintiff. The fraud could not be perpetrated by the agent alone. The aid of the plaintiff or the insured, either as an accomplice or as an instrument, was essential. If she was an accomplice, then she participated in the fraud, and the case falls within the principle of *Lewis* v. *The Phœnix Mutual Life Ins. Co.*, 39 Conn., 100. If she was an instrument, she was so because of her own negligence, and that is equally a bar to her right to recover. She says that she and her husband signed the application without reading it and without its being read to them. That of itself was inexcusable negligence. The application contained her agreements and representations in an important contract. When she signed it she was bound to know what she signed. The law requires that the insured shall not only, in good faith, answer all the interrogatories correctly, but shall use reasonable diligence to see that the answers are correctly written. It is for his interest to do so, and the insurer has a right to presume that he will do it. He has it in his power to prevent this species of fraud and the insurer has not.

But more than this. The conduct of the plaintiff at the time and subsequently, is not entirely free from suspicion. There is some evidence tending to prove that she knew of the deception. She testifies that her husband, at the time the application was signed, told the agent several times that he had been rejected by the Massachusetts Mutual, *but that the doctor told him to say nothing about it*. After the doctor had paid the premium, she hesitated about re-paying him, fearing that the policy would not be good, and even sent her daughter to request him to take the policy away. Thereupon

the doctor and the agent assured her *that it was all right in the application.* Upon that assurance she paid the premium. This, if it falls short of proving actual collusion, shows clearly that she comprehended the importance of the answers, and exhibits her negligence in a stronger light. On the whole we think that she, quite as much as the defendants, clothed this agent with the power to perpetrate the fraud. Courts should never extend by implication the power of an agent except to carry into effect the probable intention of the parties, or to prevent third persons dealing with the agent from being misled to their injury. In this case there is no ground for the supposition that the defendants ever intended to authorize the agent to act directly contrary to their interests; and if the plaintiff has been deceived her own negligence at least materially contributed to it.

We need not enlarge upon the evils necessarily resulting from holding insurance companies liable for such acts of their agents. The question is vital to the insurance interests of the country. The insured no less than the insurers are deeply interested in it. If this verdict is sustained it will tend to establish a principle fraught only with mischief. Every life insurance company in this country, and to some extent the fire insurance companies, will be at the mercy of their agents. A door will be open to fraud, collusion, and legal robbery, unprecedented in the history of jurisprudence. In view of the probable consequences of such a principle— evils co-extensive almost with the magnitude of the interests involved—we ought to pause and consider well before extending the doctrine of some of the modern cases to a case like this.

We are constrained therefore to hold that a limited agency in a case of life insurance will not be extended by operation of law to an act done by the agent in fraud of his principal, and for the benefit of the insured, especially where it is in the power of the insured by the use of reasonable diligence to defeat the fraudulent intent.

The court very properly instructed the jury that " an untrue or fraudulent statement or denial made by the applicant of a

fact material to the risk to induce the issuance of a policy will prevent the policy from taking effect as a valid contract, unless the insurer has in some way waived or estopped himself from relying upon such mistatement to avoid the policy. This waiver, to be effectual, must be made by an officer of the company authorized to make it. If there has been no evidence of any waiver except by a medical examiner of the company, or by a local agent, there must be additional proof of specific authority given them or the company will not be bound."

Some of the cases cited by the plaintiff are cases of fire insurance, in which the agents were intrusted with blank policies, signed by the president and secretary, and had full power to fill up and issue the same without referring the application to the home office. In such cases the corporation contracts solely by its agent. The acts and knowledge of the agent are the acts and knowledge of the corporation, and there is a manifest propriety in holding the corporation liable accordingly.

This court has held that in writing the answers to the interrogatories in the application, the agent is to be regarded as the agent of the company rather than the agent of the insured. We do not question the propriety of those decisions, considering the circumstances of the cases in which they were made; but we cannot regard them as establishing an inflexible rule of law applicable to all cases.

A brief reference to some of the cases will illustrate the distinction which we make. When the applicant stated fully and truthfully the circumstances relating to the title to the property insured, and the agent, knowing all the facts, but for the sake of convenience, stated the title incorrectly and issued a policy, it was held that the company could not take advantage of it. The court regarded the transaction as equivalent to an agreement that, for the purpose of the insurance, the title should be considered as it was stated to be by the agent. *Peck* v. *New London County Mutual Insurance Company*, 22 Conn., 575. See also *Woodbury Savings Bank* v. *Charter Oak Insurance Company*, 31 Conn., 517.

When the applicant answered the interrogatory, "Is a watch kept on the premises during the night?" by stating the facts, and the agent wrote the answer, "Watchman till 12 o'clock," which answer was not strictly true, it was held that the company was bound by it. *Malleable Iron Works* v. *Phœnix Ins. Co.*, 25 Conn., 465. See also *Beebe* v. *Hartford County Mut. Fire Ins. Co.*, 25 Conn., 51; *Hough* v. *City Fire Ins. Co.*, 29 Conn., 10.

The case before us is a case of life insurance. The power of the agent was in fact limited. He had no power to issue policies. The terms of his agency conferred no authority to waive conditions or forfeitures, or to agree to false and fraudulent answers to any of the interrogatories, or to make any other contract to bind the company. Presumptively the insured and the plaintiff knew all this before paying the premium; for the printed policy, which was in their hands for several days, contained at the bottom this note:—"The president and secretary of the company are alone authorized to make, alter or discharge contracts, or to waive forfeitures." The jury then were correctly told that "there must be additional proof of special authority given them," (the local agent and the medical examiner,) "or the company will not be bound."

The jury found such special authority. But we look through the record in vain to find any evidence to support such a finding.

The verdict was manifestly against the evidence, and justice requires that it should be set aside and a new trial awarded.

In this opinion the other judges concurred; except Foster, J., who, having tried the case in the court below, did not sit.