PATRICK J. WARD *vs.* THE METROPOLITAN LIFE INSURANCE COMPANY.

Third Judicial District, Bridgeport, April Term, 1895. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

This court will regard with disapproval a resort to motions for a new trial under the provisions of chapter 51 of the Public Acts of 1893, except in cases where no remedy can be had by appeal.

A policy of life insurance contained an agreement that no information, statements, or representations, made or given by or to its soliciting agents, or any other persons, should in any manner affect the rights of the insurance company unless put in writing and incorporated in the application; that no agent had the power to modify the contract, waive any forfeiture, or bind the company by receiving any representation or information, but that such powers could be exercised only by the president or secretary of the company and would not be delegated; that each statement in the application for the policy was warranted to be true, and that the policy should become void if any statement in the application was untrue. Certain material statements in the application were untrue, and the insurance company, in a suit upon the policy

after the death of the insured, claimed that these untrue statements avoided the policy.  *Held*:—

1. That parol evidence of statements and representations made to and by the general and local agents of the company, for the purpose of show-ing a waiver of the breach of the warranty contained in the policy, and that the company was estopped from setting up said breach as a de-fense, were admissible under the pleadings as tending to show such waiver and estoppel; but that in the absence of evidence upon this point, there was no presumption that such statements and representa-tions had been communicated to the home office of the company and were known·to the president or secretary of the company when the policy was issued.

2. That the operation of the rule that notice to the agent who negotiates a contract is notice to the principal, had been excluded by the agree-ment inserted in the policy for the protection of the company, and consequently an instruction to the jury, that if the district superinten-dent of the company at New Haven, when he forwarded the applica-tion to the home office with his approval, knew that material state-ments therein were false, and after the policy was issued, collected and remitted the accruing premiums, his knowledge was the knowledge of the company, and estopped it from setting up the breach of warranty, was erroneous.

3. That as a plain breach of warranty had been proved, and as there was no evidence that such breach was known to the president or secretary of the company until after the death of the insured, the defendant's request that the jury be instructed to return a verdict in its favor, should have been granted.

The term "presumption" defined and the difference between presumptions of law and of fact stated.

The case of *McGurk* v. *Metropolitan Life Insurance Co.*, 56 Conn., 528, commented upon and distinguished.

[Argued April 24th—decided May 28th, 1895.]

ACTION to recover the amount of a policy of life insurance upon the life of John Ward, late of New Haven, deceased ; brought to the Superior Court in New Haven County and tried to the jury before *Ralph Wheeler, J. ;* verdict and judg-ment for the plaintiff, and appeal by the defendant for alleged errors in the rulings and charge of the court, and also upon the ground that the verdict was against the evidence.  *Motion for new trial upon ground of verdict against evidence denied ; error and new trial granted.*

The policy stated that it was made in consideration of the application, which was made a part of the contract, and of the premiums paid and to be paid quarterly thereafter, and

was issued and accepted subject to the provisions and requirements printed on the back, which were also made part of the contract. Among these "provisions and requirements" were the following : —

" This policy is issued in consideration of and relying upon the truth of each of the statements, declarations and warranties contained in the application for this insurance, and the answers, statements and declarations contained in or indorsed upon the application are and each of them is warranted to be true ; and it is expressly agreed upon between the company and the insured that if they or any of them are untrue, or if this policy has been obtained by fraud, misstatement or concealment, then this policy shall be absolutely null and void, and all premiums paid thereon be forfeited.

" Inasmuch as only the officers at the home office of the company in the city of New York have authority to determine whether or not a policy shall issue on any application, and as they act on the written statements and representations made in the application for this policy, it is expressly understood and agreed that no information, statements, or representations made or given by or to the person soliciting or taking the application for this policy, or by or to any other person, shall be binding on the company, or in any manner affect its rights, unless such information, statements, or representations have been reduced to writing, and presented to the officers of the company at the home office, in the application referred to.

   *     *     *     *     *     *     *     *

" No agent has the power in behalf of the company to make or modify this or any contract of insurance, to extend the time for paying a premium, to waive any forfeiture, to issue a permit for residence, travel or occupation, or to bind the company by making any promise or receiving any representation or information. This power can be exercised only by the president or secretary of the company, and will not be delegated."

A copy of the application, dated August 8th, 1889, was also attached to the policy, headed "Copy of application

referred to in this policy.". It contained a copy of the applicant's statements to the medical examiner, signed by the latter and also by the applicant and the plaintiff. Among the contents of this statement were the following :—

": Give full particulars of any illness you may have had since childhood. Thirteen years ago had rheumatism in the left leg from working in water ; it lasted in slight degree for two months ; has not had it since.

"When were you last confined to the house by illness? Had typhoid fever 24 years ago ; was sick a month; perfectly recovered.

"5. Have you ever met with any accidental or personal injury ? No.

"6. Have you ever been seriously ill? If so, when, with what, and who was the medical attendant? (state his name and residence.) Only when ill with typhoid fever 24 years ago ; Dr. Barry of New Haven attended him.

"8. *a.* Name and residence of your usual medical attendant ? A. I haven't any. *b.* When and for what has his services been required ? 24 years ago for typhoid fever.

"9. Have you consulted any other medical man ? If so, when and for what ? No.

"It is hereby declared, agreed and warranted by the undersigned :—

"1. That the answers and statements contained in the foregoing application, and those made to the medical examiner as recorded in parts A and B of this sheet, together with this declaration shall be the basis and become part of the contract of insurance with the Metropolitan Life Insurance Company ; that they are true and are correctly recorded, and that no information or statement not contained in this application received or acquired at any time by any person shall be binding upon the company, or shall modify or alter the declarations and warranties made in this application : that any false, incorrect or untrue answer, any suppression or concealment of facts in any of the answers to the foregoing questions, any violation of the covenants, conditions or restrictions of the policy, any neglect to pay the premium on

Ward *v.* Metropolitan Life Ins. Co.

or before the date it becomes due shall render the policy null and void, and forfeit all payments made and all dividends which may have accrued therefrom.

" 2. That no person other than the president or secretary shall have power to waive any contract or condition on behalf of the company, which alteration or waiver to take effect must be in writing."

The policy was dated August 12th, 1889. John Ward died in 1891. All accruing premiums had been duly paid to the local agents of the company.

The complaint alleged that the deceased and the plaintiff had duly fulfilled all conditions of the policy. The answer set up breach of warranty and false statements in the application, alleging in several separate defenses, that John Ward, in May, 1889, met with a serious accident, occasioning a fracture of his ribs, from which he was suffering at the date of the application, and never fully recovered; that he was confined to the house by illness, thereby caused, from May 13th to June 19th, 1889, and attended by Doctors O'Connor, Russell, Townsend, and other physicians, whom he consulted and who were his usual medical attendants. The reply, after admitting that the policy was issued upon the application described, proceeded as follows :—

" 2. At the time of the making of said application and prior thereto and after the same was made, the said John Ward and the plaintiff fully stated to and informed the defendant and the agents who took said application of all the facts set up in all said special defenses; and at the time the defendant issued said policy, and from that time down to the date of the death of said John Ward the defendant and its officers and agents knew of said facts set up in all said special defenses.

" 3. The defendant, its officers and agents knowing all of said facts set up in all said special defenses, as set forth in paragraph 2 of this reply, collected premiums on said policy till the date of the death of said John Ward, and thereby waived all claim and right to insist on a forfeiture of said policy in suit, and thereby ratified and confirmed said policy,

notwithstanding any of the matters set up in said special de-
fenses, and the defendant is estopped from claiming any of
the matters set up in any of said special defenses as a reason
why the plaintiff should not recover."

The allegations in these two paragraphs of the reply were
traversed by the rejoinder.

Upon the trial to the jury before *Ralph Wheeler, J.*, the
defendants introduced evidence in support of their answer,
and that John Ward had been a patient at the New Haven
hospital for a month, in consequence of his accident, where
he had been attended by Doctors O'Connor, Russell and
Townsend.   The plaintiff then offered evidence tending to
show that all facts connected with his accident and the con-
sequent fracture of his ribs and treatment at the hospital, had
been fully communicated by John Ward and the plaintiff to
Morrissey, the local agent of the defendant at New Haven,
and to Joseph Lefebure, the general agent of the defendant
for the district including New Haven, before the application
was made out, and that John Ward, when first solicited by
Morrissey to take out the policy, had told him that he sup-
posed he was not a proper subject for insurance, on account
of such accident, and that he still felt sometimes a pain in
his side as the result of it ; but that Morrissey and Lefebure
assured him that this made no difference, and were fully
cognizant of the statements made in the application, and ac-
cepted his quarterly premiums as they fell due, with such
knowledge, and forwarded them to the defendant company,
by which the money had been retained.   The defendent ob-
jected to the introduction of this evidence, but the court
admitted it.

A written agreement had been executed between the de-
fendant and Lefebure, in April, 1889, defining the terms of
his authority.   He was described as a superintendent in its
Industrial Branch for the district comprehending New Haven,
and was to obtain suitable local agents, to instruct them in the
details of their work, to see that they sent in proper weekly
returns to the home office, and himself " to send to the home
office each week a report of the condition and progress of the

business " in the district. His compensation was partly dependent on the amount of the premiums collectible, and he agreed " to make no contracts, pledges or promises, verbal or written, binding said company, except in accordance with written or printed instructions from its officers first had and obtained." The plaintiff introduced parol evidence that he had acted as the general agent of the defendant in his district, and of the kind of business which it had permitted him to transact.

No direct evidence was offered to show that any information as to the injury to the ribs of John Ward, or its effects, was ever received by any officer or agent of the defendant, other than Morrissey and Lefebure.

The court instructed the jury, among other things, as follows :—

" There is a presumption that an agent of the principal, acting in his duty as agent, and receiving information which it is his duty to communicate to his principal, will so communicate it. If it be proved, however, in any case, that an agent, even a general agent, acted in collusion with a third person fraudulently towards his principal for the benefit of that third person and not of his principal, there is no longer any presumption that he communicated any knowledge to his principal, and so, in such a case, an insurance company would not be chargeable with any knowledge of the untruth of statements in the application, which were made by the applicant fraudulently, and at the fraudulent suggestion of agents, who simply desire for their own purpose to procure applicants for insurance.

" Of course fraud, in any case, is not to be presumed. It must be proved as a fact; but it may be proved by circumstantial evidence, if the circumstances are such as to remove the presumption of honest conduct which always exists, and also to outweigh the testimony tending to disprove the fraud. If the jury find from the evidence upon this question that there was fraudulent collusion between Lefebure and Morrissey and Ward, that neither the president, secretary, nor managers were actually informed of the real facts in regard

to the application, then the plaintiff cannot recover, and your verdict should be for the defendant.

\*      \*      \*      \*      \*      \*      \*      \*

"If you find from the evidence that the president and secretary of the company, or its managers in New York, learned in fact from Lefebure or from Morrissey or any one else that the statements in the application were not correct, and were informed of all the facts in connection with the issue of the policy, and that the company still continued to receive the premiums, such knowledge and the receiving of the premiums would be a waiver of any right to contest the policy on those grounds.

"If you find from the evidence that Lefebure was a superintendent of the company within a certain district including the city of New Haven, and in such agency it was within the scope of his duties to see that all the agents and the assistant superintendents engaged in soliciting policies and collecting premiums or filling out applications in the district performed their duties, that such superintendent received the applications so obtained and the premiums collected, and forwarded them to the home office, and received and delivered the policies or caused them to be delivered, and that it was a part of his duty to see each risk and to recommend risks to his company, and if you also find that he had in any way knowledge of all the real facts in regard to the application, and that he knew the statements were not correct or true, but that in good faith to his company and not fraudulently or collusively with the insured, John Ward, he not only recommended the risk, but thereafter, having full knowledge of the facts, continued to collect the premiums and pay them over to the company, then I instruct you that the knowledge of superintendent Lefebure was also the knowledge of the company, and that the company is chargeable with such knowledge, and that if thereafter it continued to receive such premiums, it is estopped from defending this suit on the grounds set up in the special defenses."

A verdict was rendered for the plaintiff, and the defend-

ant appealed, assigning error in the charge, and in the admission of parol evidence to establish a waiver or estoppel.

A motion for a new trial was also filed, under chapter LI. of the Public Acts of 1893, on the ground that the verdict was against the evidence in the cause, the trial court having previously declined to set it aside.

*Henry Stoddard* and *Samuel A. York, Jr.*, for the appellant (defendant).

I. Inasmuch as the representations made to the local agent did not come to the knowledge of the company or to the knowledge of the officers at its home office, they cannot be effective in law to constitute a waiver, when the parties contracted that such representations should not constitute a waiver or affect the rights of the defendant. This case does not differ materially from the case of *Ryan* v. *The World Mutual Life Ins. Co.*, 41 Conn., 168; and the case of the *New York Life Ins. Co.* v. *Fletcher*, 117 U. S., 519, is directly in point. The law in New York is to the same effect. See *Barteau, Executor*, v. *Phœnix Mutual Life*, 67 N. Y., 595; *McCullom* v. *Mutual Life*, 55 Hun, 103; affirmed, 124 N. Y. 642. In the recent case of *Porter* v. *U. S. Life Ins. Co.*, 160 Mass., 183, it was held that an agent cannot waive the provisions of a contract, when the contract declares that he shall not have the power to so waive; and this case is in point to the effect that the conditions on the back of the policy are a part of the contract. And indeed, this case of *Porter* v. *The U. S. Life Ins. Co.* seems to be upon all fours, so far as this question of law is concerned, with the case at bar.

The case at bar differs materially from the case of *McGurk* v. *The Metropolitan Life Ins. Co.*, 56 Conn., 528. That was an action upon what is known as an industrial policy. The case at bar is upon an ordinary policy. The policy and the application in the two cases differ materially. " A waiver is the intentional relinquishment of a known right, and there must be both knowledge of the existence of the right, and an intention to relinquish it." *Hoxie* v. *Home Insurance Co.*, 32 Conn., 40; *First Nat. Bank* v. *Hartford Life Ins. Co.*, 45

id., 44; *Lewis and Wife* v. *Phœnix Mut. Life Ins. Co.*, 44 id., 72, 91. In all of the cases examined, where the power of the agent does not include authority to make, issue or change contracts of insurance, a waiver is predicated invariably upon knowledge on the part of the officers at the home office. *Fitzpatrick* v. *Hartford Life & Annuity*, 56 Conn., 116; *McGurk* v. *Metropolitan Life Ins. Co.*, 56 id., 528; *Menard* v. *Society of St. Jean Baptiste*, 63 id., 175; *Insurance Co.* v. *Wolfe*, 95 U. S., 326; *Insurance Co.* v. *Norton*, 96 id., 234; *Insurance Co.* v. *Mowry*, 96 id., 544; *Insurance Co.* v. *Eggleston*, 96 id., 572; *Bennecke* v. *Insurance Co.*, 105 id., 355.

II. The evidence in the case is full, uncontradicted and conclusive, to the effect that knowledge of the injury to the insured and of the attendance and treatment of the physicians and surgeons was not communicated and was unknown to the officers at the home office. All of the living witnesses who took part in the transaction were called, and all testified to that effect. Lefebure, the local superintendent of the defendant at New Haven, through whom such information must have been communicated if at all, testifies that he did not communicate any such information to the home office or to any of the officers at the home office. Any conclusion of the jury, involving the proposition that any such information, in whole or in part, came to the company or to the officers at the home office, is manifestly against the weight of evidence.

*Charles S. Hamilton*, for the appellee (plaintiff).

I. In the case of *McGurk* v. *Metropolitan Life Ins. Co.*, 56 Conn., 528, this court passed upon all phases of this question now raised and adversely to the defendant's claims. The *McGurk* case is amply supported by other authorities, some of which are as follows: *Bevin* v. *Ins. Co.*, 23 Conn., 244 (255); *Rathbone* v. *Ins. Co.*, 31 id., 193 (209); *Fitzpatrick* v. *Ins. Co.*, 56 id., 116 (126 and 131); *Hodsdon* v. *Ins. Co.*, 97 Mass., 144; Bliss on Life Insurance, p. 503, § 308.

II. The verdict is not against evidence. *Waters* v. *Bristol*, 26 Conn., 398 (404); *Daley* v. *N. & W. R. R. Co.*, ibid., 590

(593).   The third special defense is the only one which sets up a question and answer, concerning which it may be claimed that the answer should have been different from what was in fact given by the insured.   It was not, however, a serious personal injury within the meaning of the law. *U. Mut. L. Ins. Co.* v. *Wilkinson*, 13 Wall., 22; *Wilkinson* v. *U. Mut. L. Ins. Co.*, 30 Ia., 119.   Assuming that it was an accidental personal injury which was proven by the defendant's evidence, it is perfectly apparent from the evidence that both Morrissey and Lefebure knew all about it, and therefore the company is estopped by its conduct.

The jury might fairly and legitimately from this evidence come to the conclusion that it did, and therefore this court will not, under the circumstances, undertake to re-try the case or to disturb the verdict, even if the court might originally have come to a different conclusion.

BALDWIN, J.   There clearly was evidence upon which the verdict can be supported, under the charge of the court. The Act of 1893 (Chap. LI., p. 228) was designed to afford a remedy only when none could be had by appeal. *Johnson* v. *Norton*, 64 Conn., 134; *Bissell* v. *Dickerson*, ibid., 61, 71.   The court feels bound to express its strong disapproval of a resort to motions of this character, involving large expense to the State from the cost of printing the entire evidence, when the real grievance arises from the instructions which the jury received from the court.   No verdict can be treated, under this statute, as against the evidence in the cause, which was warranted, on the evidence, by the terms of the charge, however erroneous such charge may have been.

Of the errors assigned upon the appeal, it is necessary to notice but three.

1. The policy in suit provides that inasmuch as only the officers of the defendant at the home office have authority to determine whether a policy shall issue in any case, and as they act on the written statements made in the application, it is expressly agreed that no information, statements or rep-

resentations made or given by or to its soliciting agents, or
any other persons, shall in any manner affect its rights, unless
put in writing and incorporated in the application; and also
that no agent has power to modify the contract, waive any
forfeiture, or bind the company by receiving any representa-
tion or information, but that such power can be exercised only
by the president or secretary of the company, and will not
be delegated. It is further stated that each of the statements
in the application, on which the policy was issued, is war-
ranted to be true, and that if any of them is untrue, the pol-
icy shall be absolutely null and void.

It was not disputed (except in the pleadings) that certain
statements in this application, of a material character, were
untrue; but the plaintiff was allowed to introduce parol evi-
dence of statements and representations made to and by the
general and local agents of the defendant, for the purpose of
showing that this breach of warranty had been waived, or
that the company was estopped from setting it up as a de-
fense. The objection to the reception of this evidence was
properly overruled. It tended, so far as it went, to support
the reply, which the defendant had traversed. The court
could not know that it might not be followed up by further
evidence that the information received by the agents had been
communicated to the company, and was known to the pres-
ident or secretary at the home office, when the policy was
issued, in which case the plaintiff would clearly have shown
himself entitled to a verdict.

No direct evidence of this nature was afterwards produced,
but the jury were instructed in substance that its place might
be supplied by a presumption that an agent receiving, as such,
information which it is his duty to communicate to his prin-
cipal, will so communicate it; that a presumption of honest
conduct always exists, where no fraud or collusion is shown;
and that fraud in any case is not to be presumed.

The term "presumption" is used to signify that which
may be assumed without proof, or taken for granted. *Mor-
ford* v. *Peck*, 46 Conn., 380, 385. It is asserted as a self evi-
dent result of human reason and experience. In its origin,

every presumption is one of fact, and not of law. It may, in course of time, become a presumption of law, and even an indisputable one. Its truth may be so universally accepted as to elevate it to the position of a maxim of jurisprudence. Its convenience, as a rule of decision, may be so generally recognized as to place it in the rank of legal fictions. But so long as it retains its original character as a presumption of fact, it has simply the force of an argument. 1 Greenleaf's Ev., § 44; Stephen's Digest of the Law of Evidence, 246.

The presumption that public officers in the discharge of their duties have observed all proper formalities, may be now considered as one of law. *Booth* v. *Booth,* 7 Conn., 350, 367; *Coggill* v. *Botsford,* 29 id., 439, 447. But this cannot be said of the presumption that the duties of a private agency have been faithfully performed. The Superior Court properly admitted evidence of the knowledge of the defendant's agents at New Haven of the breach of warranty, but it erred in instructing the jury that, in determining its effect upon the question of estoppel, they might proceed, in the absence of countervailing proof, on the presumption that it was duly communicated to the home office. The plaintiff relies upon *McGurk* v. *Metropolitan Life Ins. Co.,* 56 Conn., 528, 538; but the objection there overruled was taken to the admission of the evidence, not to the charge to the jury. Under the instructions given in the case at bar, the jury were not told simply that they would be warranted in taking into consideration the presumption in question, but it was stated to them as an authoritative and binding rule, the only exceptions to which arose from fraud or collusion. It is true that their attention was also directed to the testimony of the defendant's officers that they were in fact never informed of the statements made to its agents; but this still left the burden of proof, as to the point of notice, on the wrong party. The difference between a presumption of fact and one of law, as these terms are commonly used, is that the former may be, the latter must be, regarded by the trier. The charge in the present case was calculated to make the jury suppose that they were bound in law to give some weight to each of the

presumptions to which reference was made. It also built a presumption of waiver upon a presumption of notice. This put it on too insecure a foundation. The defendant could not be estopped from setting up a breach of warranty, unless it had waived its right to take advantage of it. *Insurance Co.* v. *Wolff*, 95 U. S., 326, 333. " A waiver is an intentional relinquishment of a known right." A presumption of the relinquishment of a known right cannot be rested on a presumption that such right was known. *First National Bank* v. *Hartford Life & Annuity Ins. Co.*, 45 Conn., 25, 44 ; *U. S.* v. *Ross*, 92 U. S., 281, 283 ; *Manning* v. *Ins. Co.*, 100 id., 693, 699.

2. The Superior Court also erred in instructing the jury that if the district superintendent of the company at New Haven forwarded the application in question to the home office in good faith, with a recommendation of the risk, when he knew that material statements in the application were false, and after the policy was issued continued to collect the accrued premiums upon it and remit them to the defendant, then his knowledge was its knowledge, and its receipt and retention of the premiums estopped it from setting up the breach of warranty. There are expressions in the case of *McGurk* v. *Metropolitan Life Insurance Co.*, 56 Conn., 528, 539, which lend some countenance to the plaintiff's claims in this respect, but they were used with reference to a totally different question,—that of the admissibility of evidence of the knowledge of the agent; nor did the policy there in suit contain any provisions similar to those in that of the plaintiff, as to oral statements which were not incorporated in the application.

The rule that the knowledge of an agent is the knowledge of the principal, if the agent acquired it while acting for the principal, in the course of the transaction which is in question, rests on the ground that the agent stands, for that transaction, in the place of the principal, and in effect is the principal, so far as concerns the rights of the other party. *Farmers' & Citizens' Bank* v. *Payne*, 25 Conn., 444, 449, 450. It is unimportant whether he in fact communicated his

knowledge to the principal, because even if he did not, it would be unfair to allow such a breach of duty on the agent's part to put the other party in a worse position. *Smith* v. *Board of Water Commissioners*, 38 Conn., 208, 218. There is no reason why a corporation which necessarily contracts through agents, but may have agents of superior and agents of inferior authority, should not stipulate in any contracts executed in its behalf that their provisions can be varied by no notice or representations, not brought to the actual knowledge of one of its principal officers, nor by any waiver not authorized by them. *Ryan* v. *World Life Ins. Co.*, 41 Conn., 168, 175 ; *Insurance Co.* v. *Wolff*, 95 U. S., 326, 332. Provisions of that character were inserted in the policy in suit, and in the application upon which it was based. They were designed to exclude the operation of the rule that notice to the agent who negotiates a contract is notice to the principal ; and such was their necessary effect.

3. The Superior Court was asked to direct the jury to return a verdict for the defendant. A plain breach of warranty had been proved. The plaintiff introduced evidence that it was known to and waived by the local agent and district superintendent of the company, but none that it was ever known at its home office. The local agent and the person who was president of the company at the date of the application were dead, but the defendant produced the district superintendent, the vice-president, the secretary, and the general manager of the company, each of whom testified that he never knew that any of the statements in the application were untrue, until after the death of John Ward. Under these circumstances, no verdict for the plaintiff could be supported, and there was nothing left to submit to the consideration of the jury, upon which their opinion could be of any importance in the determination of the cause. It might, as it has done, defer, but it could not avoid the inevitable result. It therefore became the duty of the court, to the end that right and justice might be administered without denial or delay, (Const., Art. I. § 12,) to comply with the defendant's request and direct a verdict in its favor. *People's Savings*

*Bank* v. *Norwalk*, 56 Conn., 547, 556; *Talcott* v. *Meigs*, 64 id., 55, 58.

The motion for a new trial is denied; but upon the appeal there is error, and a new trial is ordered.

In this opinion the other judges concurred.