MABEL FRENCH MACKAY, EXECUTRIX (ESTATE OF FREDERICK D. MACKAY) *vs.* AETNA LIFE INSURANCE COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued April 6th—decided June 26th, 1934.

*Frederick H. Wiggin,* with whom, on the brief, were *Henry Stoddard,* and *Arnold G. Schmidt* of Brooklyn, New York, for the appellant (plaintiff).

*James W. Carpenter* and *Olcott D. Smith,* for the appellee (defendant).

HINMAN, J. The plaintiff's decedent, Frederick D. MacKay, resided in Brooklyn, New York. Early in his business career he entered the employ of E. W. Bliss Company of Brooklyn and in 1931 was first vice-president in charge of sales and contracts made by that company. On December 30th, 1931, he gave to J. Edward Dunn, a local agent for the defendant company, in Brooklyn, an application for a life insurance policy for $50,000, and on the same day was examined by a medical examiner for the company. He was found to be a good physical life insurance risk, being about sixty years of age and in sound health. The application and the report upon the medical examination were submitted to the home office of the defend-

ant at Hartford; on January 6th, 1932, it issued its policy which came into the hands of Dunn for delivery, and he delivered it to a representative of Mac-Kay at the office of the Bliss Company on January 8th. The annual premium was $1879, payment of which was made by a check for $500 on January 4th and a check for the balance at the time of delivery. Dunn's commission as agent was $761. The beneficiary named in the policy was the insured's executors, administrators, or assigns. The application, made part of the policy, provided that, "If given, the terms of the binding receipt are hereby agreed to. If not given, it is agreed that no insurance hereon shall be effective until a policy is issued and the entire first premium has been paid during the good health of the applicant and within sixty days from the date of medical examination." No such binding receipt was given to MacKay. The policy contained a similar provision respecting good health and provided, further, that "All agreements made by the Company are signed by its President, Vice-President, Secretary, Assistant Secretary, Treasurer or Assistant Treasurer. No other person can alter or waive any of the conditions of this policy, extend the time for paying a premium or make any agreement which shall be binding upon the Company."

On December 31st, 1931, the day following the date of the application, MacKay spent the evening at home reading and conversing with his wife, who was convalescing from a serious operation and still under the care of a nurse. At about ten p. m. when the nurse was preparing her for bed MacKay went into an adjoining room. Shortly thereafter Mrs. MacKay called to her husband and hearing his voice in distressed tones immediately sent the nurse to the room, where she found him prostrate and in great distress.

A physician was immediately called and relieved him somewhat. Next day the physician called twice; he was suspicious that MacKay was suffering from coronary thrombosis and required him to remain quietly in bed and not leave it even to go to the bathroom, required nurses to be in constant attendance, and saw him daily until the morning of January 14th when MacKay expired. Coronary thrombosis was the cause of death. MacKay was not told of the character of the attack from which he was suffering or of the danger that might result to him therefrom, because the physician feared that the results of communicating such information might prove fatal. During the two weeks MacKay remained quietly in bed, talked over the telephone with his office and was in a cheerful frame of mind.

The plaintiff, as executrix of MacKay's will, filed proof of death on or about January 19th, 1932; on or about March 13th further forms for proof of claim were delivered to the plaintiff by the defendant and about March 30th, were executed and delivered to the defendant. The defendant retained the premium until April 6th, 1932, when it returned it to the plaintiff and advised her that it did not recognize the existence of a good contract of life insurance because of violation of the good health condition, above quoted. The plaintiff refused to accept the returned premium, and brought this action upon the policy. She alleged in her complaint that on the dates when the instalments were paid and the policy was delivered the insured was ill, and that at and before such delivery and payments the illness was known to the defendant. It was also alleged in successive paragraphs that the defendant, so knowing of the illness, by delivery of the policy and acceptance and retention of the premium (1) "waived any provision, right, privi-

lege or immunity to the effect that the policy of insurance should not be effective until it was issued and the entire first premium had been paid during the good health of the insured," and (2) "elected to proceed with the contract of insurance," and (3) "is estopped to deny or repudiate said contract and policy of insurance and its liability to pay the amount of the insurance." The defendant by its answer admitted that MacKay was ill at the time alleged, but denied the remainder of the allegations above mentioned. A special defense and cross-complaint alleged fraudulent failure to disclose and concealment, by MacKay, of the change in the condition of his health between the date of the application and delivery of the "purported" policy, but this defense and cross-complaint was withdrawn during the trial.

Upon the trial, the evidence as to the application for and delivery of the policy, the payment, retention and return of the premium, and concerning the circumstances and nature of MacKay's illness and the cause of his death was substantially undisputed and to the effect set forth in the above statement of facts. The defendant also introduced evidence that it commenced an investigation of the claim on or about January 19th, 1932, and upon completion of it on April 6th, 1932, rejected the claim because of breach of the "good health" provision. Also that on January 8th, 1932, and during the period from the evening of December 31st, 1931, to January 14th, 1932, MacKay was not an insurable risk with any reputable life insurance company. At the close of the evidence the trial court, on motion, directed the jury to return a verdict for the defendant, which was done, and a subsequent motion to set it aside was denied.

The legitimate and decisive issues on this appeal have been unnecessarily complicated and obscured by

the inclusion in the record of superfluous matter. Pleadings which became obsolete before the trial are retained. Although the trial court gave only a summary direction to the jury to render a verdict for the defendant, there is inserted a voluminous finding in a form adapted only to testing claimed errors in a charge, plaintiff's numerous requests to charge, and the direction of verdict as a purported charge. Of the thirty-two assignments of error fourteen are addressed to refusal to charge as requested, another claims error in the "charge," and three pertain to statements in the trial court's memorandum of decision denying the motion to set aside the verdict. The result of the extended and difficult winnowing process which has been necessitated by this condition of the record is a conclusion that present discussion may be confined to points decisive of certain rulings on evidence and the decision on the motion to set aside the directed verdict.

The plaintiff offered evidence that Dunn, the agent who solicited and obtained the application for the policy in suit, had authority from the defendant to solicit and receive in its behalf applications for policies of life insurance in Brooklyn, to accept first premium payments or instalments thereof and give the company's official premium receipts therefor and to deliver policies; also that Dunn had possession from the defendant of the policy in question and received no special instructions regarding delivery of it or of receipts for payment of the first premium. The plaintiff called as a witness Frank C. B. Paige, president of the E. W. Bliss Company, who testified that, on January 7th, 1932, Dunn, in a conference with him, "expressed himself sorry to learn that Mr. MacKay was not well." Defendant's counsel thereupon inquired if the plaintiff intended to follow this with evidence that Dunn's knowledge was brought home to an executive official

of the defendant company and plaintiff's counsel admitted that he had no proof of such communication. Defendant's counsel then moved to strike out Paige's evidence on the grounds that "it is barred (1) by the terms of the policy which state distinctly that any question of waiver of any of its provisions is delegated solely and exclusively to the executive officials," and (2) "by the parol evidence rule . . . that written contracts cannot be varied by parol;" also (3) "it is barred in this type of an action which is not brought in equity to reform the policy, . . . [but] in law and predicated on the policy." The trial court allowed the evidence to stand only as applicable to the issue, raised by the special defense, of alleged fraudulent failure of MacKay to disclose his condition of health, and ruled it inadmissible on the issues of waiver, estoppel, and election. Subject to the same limitations, Paige testified further, in substance, that he told Dunn that MacKay's illness was probably indigestion and, on cross-examination, as to some details of his information as to the illness, that he had no idea that it was heart trouble, and that he told Dunn that MacKay was in bed all of the time. Later the defendant moved, and was permitted, to withdraw its special defense and cross-complaint, and thereupon moved to strike out the testimony of Paige which had been admitted only as pertaining thereto. This motion was granted, and proffered testimony of other witnesses as to knowledge by Dunn of MacKay's illness was excluded. These several rulings were excepted to and are assigned as error.

The first ground of defendant's objection to evidence of the agent's knowledge of MacKay's illness was that it was precluded by the policy provision that no person other than one of certain specified executive officers of the company can alter or waive any of the

conditions of the policy. As to this, the controlling principle is well expressed in *Bible* v. *John Hancock Mutual Life Ins. Co.*, 256 N. Y. 458, 463, 176 N. E. 838: "The insured became chargeable with notice, upon the acceptance of the policies, that there was no authority in the agent to waive the breach of a condition coming to his notice after a policy had been delivered as a contract presently existing. *Drilling* v. *New York Life Ins. Co.* [234 N. Y. 234, 137 N. E. 314]. She was not chargeable with notice that the limitation would apply by retroaction so as to nullify a waiver or estoppel having its origin in conduct antecedent to the contract. *Whipple* v. *Prudential Ins. Co.*, 222 N. Y. 39, 43 [118 N. E. 211], and cases cited; *Wood* v. *American Fire Ins. Co.*, 149 N. Y. 382, 386 [44 N. E. 80]; *Drilling* v. *New York Life Ins. Co., supra.*" See also *McGurk* v. *Metropolitan Life Ins. Co.*, 56 Conn. 528, 537, 16 Atl. 263; note, 13 L. R. A. (N. S.) 827.

The second contention was that to admit this evidence would violate the rule that written contracts cannot be varied by parol. *Ryan* v. *World Life Ins. Co.*, 41 Conn. 168, affords a typical instance in which the rule invoked will apply. In that case the plaintiff's offer was to prove that to questions in the application, which was made part of the policy, true answers were given by the insured but that answers were wrongly written into the application by the local agent of the insurer without knowledge or consent of the insured. This was held (p. 170) to be an inadmissible attempt to substitute, for a part of the written contract declared on a different parol agreement. The present case is readily distinguishable. The purpose of the offer to prove knowledge of Dunn as to MacKay's state of health was not to show a contract different from that written in the policy by eliminating or changing the good health condition, but as a step

toward establishing an effect from conduct of the insurer obviating the consequence, otherwise attaching to breach of the condition, of avoiding or rendering voidable the policy. Admission of evidence for that purpose—the creating of a waiver or equitable estoppel—does not violate the parol evidence rule. Vance, Insurance (2d Ed) pp. 497-508; *Peck* v. *New London County Mutual Ins. Co.,* 22 Conn. 575; *Virginia F. & M. Ins. Co.* v. *Richmond Mica Co.,* 102 Va. 429, 46 S. E. 463.

The remaining objection, as developed on the brief and in argument here, appears to have been that in order to entitle evidence of the agent's knowledge to admission or retention it must be supplemented by evidence that the knowledge was communicated to an officer of the company having authority to waive the condition. In the consideration of this question an attempt to briefly clarify the nature and essentials of waiver and estoppel may be helpful. In the law of insurance, a breach of condition or warranty, out of which avoidance of the policy may be claimed, does not operate automatically to forfeit or avoid the policy, but sets in operation a right of choice. The insurer may elect either to continue or to terminate. The condition or warranty, the breach of which gives such right of avoidance, is subject to waiver either by express agreement or acts of the insurer from which waiver may be implied or estoppel asserted. "The words waiver and estoppel are often used interchangeably by the courts. There is, however, a real distinction. Waiver is the voluntary relinquishment of a known right. It involves the idea of assent, and assent is an act of understanding. This presupposes that the person to be affected has knowledge of his rights, but does not wish to assert them. Intention to relinquish must appear, but acts and conduct inconsistent with

intention to terminate the contract are sufficient. The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. Estoppel rests upon the misleading conduct of one party to the prejudice of the other. Estoppel involves the acts and conduct of both parties and the inquiry always is as to whether or not the fault of one party has induced the other in reliance thereon to alter his position to his detriment." Richards, Law of Insurance (4th Ed.) § 106; *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 392, 65 Atl. 134; Vance, Insurance (2d Ed.) p 459.

When the insurer, at the time of the issuance of the policy, has knowledge of existing facts which, if insisted on, would invalidate the contract from the time of its inception, it may be held, by delivering the policy and accepting the premium, to waive the cause of avoidance or to be estopped from insisting upon or taking advantage of it. Richards, Law of Insurance, § 127; 5 Cooley's Briefs on Insurance, p. 4204 *et seq.;* 14 R. C. L., Insurance, § 346. The possession by the insurer of knowledge of invalidating facts is universally recognized as an essential prerequisite, but the effect of knowledge of the agent of the insurer is a subject upon which there is a confusing diversity of authority. A majority of courts hold that, subject to exceptions in case of fraud hereafter noticed, information communicated to or knowledge otherwise obtained by an agent within the scope of his authority —while he is acting in a matter in which he is required or authorized to act and the information is necessarily incident to that matter and affecting the liability of the company—is knowledge of the principal, the insurer. 2 Couch, Cyc. of Ins. Law, 1544 *et seq.; West* v. *National Casualty Co.,* 61 Ind. App. 479, 495, 112 N. E. 115. We have applied this rule in equitable

actions to reform policies. *Back* v. *Peoples National Fire Ins. Co.,* 97 Conn. 336, 116 Atl. 603; *Enfield* v. *Hamilton,* 110 Conn. 319, 148 Atl. 353; *Dresser & Son, Inc.* v. *Allemania Fire Ins. Co.,* 101 Conn. 626, 126 Atl. 912. Such notice to the agent was held to be notice to the principal in *Bible* v. *John Hancock Mutual Life Ins. Co., supra,* an action at law to recover on the policy, upon which the plaintiff largely relies.

Many cases base the imputation to the insurer of an agent's knowledge upon a presumption that the agent will communicate it to his principal. See 2 Couch, Cyc. of Ins. Law, p. 1548, and cases in note 5. In most of these the presumption is held to be conclusive unless fraud is clearly indicated. "Of course this rule does not apply when the agent is known to be acting in fraud of the principal." Vance, Insurance, p. 413; *Lewis* v. *Phoenix Mutual Life Ins. Co.,* 39 Conn. 100; *Ryan* v. *World Life Ins. Co.,* 41 Conn. 168, 173. The exception has been held to arise also "when the agent's conduct is such as to raise a clear presumption that he will not communicate to his principal his knowledge of the fact in controversy, as where he acts in his own interest and adversely to the interest of his principal." *Elliott* v. *Knights of Modern Maccabees,* 46 Wash. 320, 323, 89 Pac. 929, 13 L. R. A. (N. S.) 856; *Hanf* v. *Northwestern Masonic Aid Asso.,* 76 Wis. 450, 45 N. W. 315; *First National Bank* v. *Bevin,* 72 Conn. 666, 45 Atl. 954; 32 C. J. 1070; 2 C. J. 868. In *Ryan* v. *World Life Ins. Co., supra,* it is said (p. 171): "When an agent is apparently acting for his principal, but is really acting for himself, or third persons, and against his principal, there is no agency in respect to that transaction, at least as between the agent himself or the person for whom he is really acting and the principal." In *Resnik* v. *Morganstern,* 100 Conn. 38, 42, 122 Atl.

910, we say that while "it is undoubted law that the knowledge of an agent gained while acting for his principal and in reference to a matter in the course of his agency is the knowledge of the principal, . . . the rule is, however, subject to exceptions. It is founded upon the presumption that the agent will perform his duty and give the knowledge he has obtained in the course of his agency to his principal. The rule is founded in the public safety. When, however, the circumstances are such as to raise a clear presumption that the agent will not perform this duty, the presumption that he has performed no longer holds. The circumstances have made it intrinsically improbable that the agent will have informed his principal. Three sets of circumstances which are held to rebut this presumption are: (1) Where it is not the duty of the agent to disclose; (2) when the agent is acting adversely to the interest of his principal, whether for the interest of himself or a third party; (3) where the agent is acting in fraud of his principal. 2 Mechem, Agency (2d Ed.) § 1813. . . . In this case the second exception would arise if [the agent] acted adversely to the plaintiff's interest by concealing his knowledge, either through some interest or motive of his own, or that of another. So that, *pro tanto,* the agency really ceased." See, also, *Davis-Scofield Co.* v. *Agricultural Ins. Co.,* 109 Conn. 673, 681, 145 Atl. 38; *Corsello* v. *Emerson Brothers, Inc.,* 106 Conn. 127, 134, 137 Atl. 390; *Cone* v. *Cullen,* 108 Conn. 126, 130, 142 Atl. 674.

In *McGurk* v. *Metropolitan Life Ins. Co., supra,* the defendant's answer set forth a false warranty of the insured, in his application, as to his occupation. The plaintiff's reply alleged knowledge by the defendant of the business in which the insured was actually engaged. The defendant denied this and on

the trial evidence was offered by the plaintiff of information possessed by the defendant's agent, an assistant superintendent, as to the actual occupation of the insured. It was held (p. 538) that this evidence was properly receivable on the issue of the defendant's knowledge of the facts. "The presumption was a very strong one that the assistant superintendent of the district, who took and filled out the application of McGurk, and who afterwards delivered to him the policy and collected the premium thereon, whose duty it was to see that all the agents of the defendants soliciting applications for insurance and collecting premiums of the insured within his district performed their duty, informed the defendants of all the facts respecting the occupation of McGurk, so recently within his knowledge, and which it was his bounden duty to do when he took to them McGurk's application for insurance. He would have been recreant to his manifest duty had he failed so to inform them."

*Ward* v. *Metropolitan Life Ins. Co.*, 66 Conn. 227, 33 Atl. 902, 50 Am. St. Rep. 80, was an action to recover the amount of a policy of insurance upon the life of John Ward. The complaint alleged fulfillment of all conditions of the policy. The answer set up special defenses of breach of warranty and false statements, alleging that, contrary to statements in the application, Ward had met with a serious accident from which he had not fully recovered, also had suffered an illness shortly before making the application. The reply alleged that at and before the making of the application the plaintiff fully stated to and informed the agent who took the application of all the facts set up in the special defenses, that the defendant knew of those facts but collected premiums on the policy until the death of Ward (about a year and a half), and thereby waived its right to insist on forfeiture of the

policy and was estopped from claiming it. These allegations were traversed by the rejoinder. The plaintiff was allowed, over objection, to introduce parol evidence of statements and representations made to agents of the defendant as to the injuries and illness prior to the application, and the admission of this evidence was assigned as error. The ruling was sustained on appeal, but it was held (p. 239) that the trial court erred in instructing the jury that, in determining the effect of knowledge of the agent, "they might proceed, in the absence of countervailing proof, on the presumption that it was duly communicated to the home office. . . . Under the instructions given . . . the jury were not told simply that they would be warranted in taking into consideration the presumption in question, but it was stated to them as an authoritative and binding rule, the only exceptions to which arose from fraud or collusion." If this be construed as indicating that the presumption arising from proof of knowledge by an agent is not to be treated as conclusive, even in the absence of a showing of fraud or that the agent was acting adversely to his principal, but is merely to be taken into consideration in determining whether the company acquired the knowledge imparted by the information possessed by the agent, it would not accord with the settled doctrine adopted in the other cases, in this State, above referred to.

In the present case the plaintiff admitted illness of the insured when the policy was issued and a consequent violation of the policy condition, but alleged that the defendant company knew of the illness when the policy was delivered and the premium was accepted. The answer denied these allegations. On the pleadings, therefore, the issues as to defendant's knowledge, raised by the complaint and answer, were similar,

in effect, to those in the *Ward* case under the plaintiff's reply and the defendant's rejoinder. Here, as there, evidence of the agent's knowledge "tended, so far as it went, to support" these allegations of the complaint. We note that the defendant in its brief (p. 27) appears to concede that, in this State, parol evidence that an agent had knowledge of facts on which waiver or estoppel is claimed is admissible for the purpose of establishing that such facts were communicated to his principal, citing the *Ward* and *McGurk* cases, but claims that such evidence cannot be admitted "for the purpose of attempting to show that the agent himself waived the conditions of the policy." As to this, it suffices to say that it is clear from the record that the evidence was offered for the purpose first mentioned.

Of the above-mentioned exceptions to the rules imputing to the principal the knowledge of the agent or raising a presumption of communication, that of fraud, collusive or otherwise, between agent and insured does not appear to be claimed. Also, there is not present, as in the *Ward* case, a stipulation in both application and policy that "no information, statements, or representations made or given by or to" the agent "shall be binding on the company, or in any manner affect its rights," unless reduced to writing and presented to the officers of the company. The question whether Dunn was so acting adversely to the interest of the company as to bring into operation the exception applicable in case of such adverse action was, at most, not so clearly settled in the affirmative as to remove it from the domain of the jury. The trial court was not warranted in assuming, as it apparently did, that the circumstance that Dunn would enjoy a large commission if the policy became effective raised such a clear presumption that the agent would not

perform his duty to inform his principal of MacKay's illness that the presumption of knowledge of the principal, which otherwise would be raised by his possession of information, could not obtain. See Amer. Law Inst. Restatement, Agency (Tent. Draft No. 5), p. 164, Comment *c.* Here, as in *Resnik* v. *Morganstern, supra,* as there indicated (p. 44), availability of a presumption of communication of the agent's knowledge depended upon whether the jury found facts sufficient to destroy the presumption that the agent would perform his duty to disclose.

We conclude, therefore, that the elimination from the case of the testimony of Paige as to information possessed by Dunn concerning MacKay's state of health and the exclusion of other evidence to like effect were erroneous, both under the strict rule of imputation or conclusive presumption and under the doctrine of our own cases as above indicated. Therefore, there is no present occasion for determination as to the effect of such conflict as exists between the law of New York and of this State as to the nature and effect of the presumption.

There is error and a new trial is ordered.

In this opinion the other judges concurred.