**Samuel LAZAR and Roselia Lazar, Plaintiffs,**

**v.**

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

**Civ. No. 11269.**

United States District Court
D. Connecticut.

Sept. 17, 1968.

[redacted]

[redacted]

John V. Zisk, Jr., New Britain, Conn., for plaintiffs.

S. Robert Jelley, Wiggin & Dana, New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

In this civil action to enforce a family medical insurance agreement, the defendant moves for summary judgment. Rule 56 of the Federal Rules of Civil Procedure.

For the purposes of this motion, the following facts are relevant and undisputed. On November 21, 1963, the plaintiff, Samuel Lazar, applied to an agent of the defendant insurer for a comprehensive family medical policy. The policy was a nonmedical one and, therefore, neither Mr. Lazar nor his wife, Roselia, had to submit to a medical examination. Instead Mr. Lazar was required to complete an application which formed the basis for issuance of the policy. The application was designed in part to reveal the recent medical history of prospective policyholders. Question 11 in the application read as follows:

> Have you or any of the said family members, within the past five years, had any treatment, examination, or advice by a physician or other practitioner, or at a clinic, hospital, dispensary, or sanatorium?
>
> (If yes, give details.)

The Lazars disclosed to the agent that Mrs. Lazar on several occasions had seen her family doctor and had been to the Lahey Clinic for an annual checkup, but that no "specific findings" were made by the doctors. The agent replied that this type of information was not within the meaning of Question 11. The agent himself wrote "No" as the answer. Subsequently, the application was processed and the policy in question was issued, covering Mr. Lazar as the named insured and Mrs. Lazar as a member of his family.

In June, 1964, Mrs. Lazar contracted multiple sclerosis. The defendant paid benefits in the amount of $433.36 [1] but then refused to make further payments and cancelled the policy. This suit followed.

The defendant contends that it was entitled to cancel the policy as a matter of law because Mr. Lazar knowingly misrepresented his wife's prior medical history on the application. It argues it is insulated from the rule that notice to the agent of prior medical treatment was notice to the company because the application contained the stipulation that "No information as to any matter made a subject of inquiry in this application shall be considered as known to the Company unless stated herein." See Ward v. Metropolitan Life Ins. Co., 66 Conn. 227, 241, 33 A. 902 (1895); MacKay v. Aetna Life Ins. Co., 118 Conn. 538, 553, 173 A. 783 (1934).

Under Connecticut law,[2] a misrepresentation in the application for life or health insurance concerning the applicant's prior medical history is material to the risk as a matter of law, and, when knowingly made, will defeat recovery by the insured at the option of the company. State Bank & Trust Co. v. Connecticut General Life Ins. Co., 109 Conn. 67, 70, 72, 145 A. 565 (1929). Thus, a knowing misrepresentation by Mr. Lazar in response to Question 11 would justify the cancellation of the policy by the defendant.

---

1. The defendant has filed a counterclaim to recover all benefits paid to the plaintiffs.

2. Since the policy was negotiated and delivered in the State of Connecticut, the law of that state must determine the rights of the parties in this litigation. Rosenthal v. New York Life Ins. Co., 304 U.S. 263, 58 S.Ct. 874, 82 L.Ed. 1330 (1938); Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Jenkins v. Indemnity Ins. Co., 152 Conn. 249, 205 A.2d 780 (1964).

On the present record,[3] however, the Court is unable to determine as a matter of law whether Mr. Lazar *knowingly* gave a false statement in the application. An insured makes a *knowing* misrepresentation only when he gives an answer other than that which he has reason to believe is true. Here the plaintiffs allege they fully disclosed to the agent that Mrs. Lazar had general or annual medical checkups and the agent advised them that Question 11 was not designed to elicit such information. Thereupon, relying on the agent's explanation and perhaps honestly believing the question related only to consultations that revealed physical abnormalities, Mr. Lazar assented to the negative answer. Assuming the truth of these allegations, as we must, it would be permissible for the trier to infer that Mr. Lazar's answer at the time he made it was not *knowingly* false.

Under these circumstances, the holding in *Ward* is not applicable. There it was conceded the insured *knowingly* gave untrue answers to specific questions on the application. Here the insured insists his answer was within the framework of the question, as explained and interpreted by the defendant's agent, and, therefore, it was a proper and honest one. Absent fraud and collusion, it was within the agent's power and authority "to explain the questions and decide for himself and the *bona fide* applicant, what was a satisfactory answer, and how the answer should be applied to the subject." Malleable Iron Works v. Phoenix Ins. Co., 25 Conn. 465, 474 (1857). If an insured truthfully states material facts to an agent, who explains that those facts are not encompassed by the language of the question, the company in fairness should be bound by the agent's conclusion. Ibid, at 475.

Accordingly, since an issue of fact exists, the motion for summary judgment is denied. American Mfgrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc., 388 F.2d 272, 279 (2 Cir. 1967); United States v. Diebold, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam).

---

3. Discovery proceedings in this case have been skimpy. No depositions have been taken. Plaintiffs' answers to the few interrogatories submitted by the defendant are vague and in part contradictory; the plaintiffs' affidavit contains few details. The Court is not informed of Mrs. Lazar's state of health at the times she was examined, nor is it clear whether Mr. Lazar knew of her visit to the Lahey Clinic.