**Shirley LEWIS, Plaintiff,**

v.

**JOHN HANCOCK MUTUAL LIFE IN-SURANCE COMPANY, Defendant.**

**No. B–75–176.**

United States District Court, D. Connecticut.

Dec. 5, 1977.

James A. Trowbridge, Flynn, White & Trowbridge, Trumbull, Conn., for plaintiff.

Donald W. Bicknell, D. S. Maclay, Robert J. Berta, Marsh, Day & Calhoun, Bridgeport, Conn., for defendant.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ZAMPANO, District Judge.

This action was commenced to collect the proceeds of two insurance contracts issued by the defendant on the life of Walter E. Lewis, plaintiff's deceased husband. The defendant now moves for summary judgment. Rule 56, Fed.R.Civ.P.

For the purposes of this motion, the following facts are deemed pertinent and undisputed. On July 1, 1971 and again on June 10, 1972, the defendant issued an insurance policy in the amount of $15,000 on

Mr. Lewis' life. Eight days after the issuance of the second policy, Mr. Lewis was killed when a shotgun in the possession of a friend accidentally discharged. The defendant has refused to pay the insurance proceeds to the plaintiff, other than to tender the paid premiums which were declined, on the ground that Mr. Lewis made material misrepresentations in the applications for insurance which voids the policy under Connecticut law.

Question 10 in both applications read as follows:

> Has any person proposed for insurance been charged with but not acquitted of the violation of any criminal law, or fined more than $50 for the violation of any traffic law, in the past three years?

When the applications were completed, the answer "No" was recorded for this question. The parties agree that the negative responses to question 10 were false because Mr. Lewis had been arrested during the relevant time period for breaking and entering, was found guilty, and received a 360-day suspended sentence with three years probation. In addition, another charge of breaking and entering was pending against him at the time of his death.

The defendant contends that it is entitled to rescind the policies because Mr. Lewis knowingly misrepresented his prior criminal record, which misinformation was material to the risk of insurance as a matter of law. The plaintiff, on the other hand, denies her husband responded falsely to question 10. She claims that at trial she will prove the defendant's agent, Edward Roper, supplied all the answers to the information required by the questionnaires and that at no time did he ask Mr. Lewis any questions concerning his involvement with law enforcement agencies. In his deposition, Mr. Roper admits he inserted the "No" answers to question 10 without the participation or assistance of Mr. Lewis.[1] Mr. Roper further testified that, contrary to his training and usual practice, he failed to caution Mr. Lewis to read over the representations set forth in the applications before affirming to the truth of the statements contained therein.

■ On the basis of the present record, it seems evident that genuine issues as to material facts exist which preclude disposition of this case by way of summary judgment. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Home Insurance Company v. Aetna Casualty and Surety Co.,* 528 F.2d 1388, 1390 (2 Cir. 1976); *Heyman v. Commerce & Industry Ins. Co.,* 524 F.2d 1317, 1320 (2 Cir. 1975). First, since an insured makes a knowing misrepresentation only when he submits an answer to a question in the application other than that which he has reason to believe is true, *Lazar v. Metropolitan Life Insurance Company,* 290 F.Supp. 179, 181 (D.Conn.1968), it follows that an insured should not be held responsible for an answer in the application if he was justifiably unaware of its falsity, had no actual or implied knowledge of its existence, and was not guilty of bad faith, fraud, or collusion. *Mathis v. Minnesota Mutual Life Ins. Co.,* 302 F.Supp. 998, 1004 (M.D.N.C.1969); see also *Guariglia v. John Hancock Mutual Life Ins. Co.,* 139 Conn. 54, 57, 90 A.2d 162 (1952); *MacKay v. Aetna Life Ins. Co.,* 118 Conn. 538, 549, 173 A. 783 (1934).

Second, even if the decedent may be deemed to have misrepresented his criminal record because he was obligated to know the contents of the applications he signed, *Kelly v. John Hancock Ins. Co.,* 131 Conn. 106, 110, 38 A.2d 176 (1944); *Bahr v. The Prudential Ins. Co. of America,* 5 Conn.Cir. 620, 625, 320 A.2d 422 (1969), it appears that the factual question remains whether the untrue statement was material to the risk in the contract of insurance.

■ The moving papers reveal that persons with criminal records are not absolutely proscribed from obtaining life insurance from the defendant; rather, the defendant

---

1. In his deposition, Mr. Roper stated he inferred the nonexistence of a criminal record because of Mr. Lewis' job with a "government plant" that would not hire a person with a "police record," his "excellent standing" in the community, and his "excellent life style."

has established a set of guidelines to govern the insurability of such persons which is to be applied on "a case by case" basis. (Ex. 1). Factors to be weighed by the underwriter include whether the applicant had "served time" and whether "a sufficient period of time has passed to indicate the individual is reformed." Thus, unlike a misrepresentation with respect to a medical question in an application which insurance companies regard as material *per se* to the risk in life and health insurance, cf. *Guariglia v. John Hancock Mutual Life Ins. Co.,* supra, 139 Conn. at 57, 90 A.2d 162; *State Bank & Trust Co. v. Connecticut General Life Ins. Co.,* 109 Conn. 67, 72, 145 A. 565 (1929), the defendant apparently has adopted a fitness test for applicants with criminal records. Under these circumstances, the trier in the instant case must resolve the factual dispute whether Mr. Lewis' arrest and conviction for breaking and entering "in the judgment of reasonably careful and intelligent persons, . . . would so increase the degree or character of the risk of the insurance as to substantially influence its issuance, or substantially affect the rate of premium." *Davis-Scofield v. Agricultural Ins. Co.,* 109 Conn. 673, 678, 145 A. 38, 40 (1928).

Finally, there is the contested issue whether Mr. Lewis read the applications before he signed them. If through the conduct of defendant's agent, Mr. Lewis failed to read over the questions and answers in the applications, he would in effect have made no misrepresentations at all; on the other hand, if he became aware of the false answers by any means before or after signing the applications, he must be considered to have adopted the insurance agent's answers as his own and, therefore, he would be responsible for the untrue representations.

Accordingly, under the circumstances, the defendant's motion for summary judgment is denied.