**MT. AIRY INSURANCE COMPANY, Plaintiff,**

v.

**Daniel J. MILLSTEIN, Connecticut Attorneys Title, Insurance Company, Joel Sylvain, and Laura B. Stewart, Defendants.**

**Civil No. 3:94cv1563 (PCD).**

United States District Court, D. Connecticut.

May 31, 1996.

Joseph F. Skelley, Jr., Elizabeth M. Cristofaro, Jonathan Kline, Skelley, Rottner, P.C., Hartford, CT, Thomas More Ryan, Carlos Del Carpio, Bollinger, Ruberry & Garvey, Chicago, IL, for Plaintiff.

William F. Healey, Martin A. Gould, Gould, Killian & Wynne, Hartford, CT, for Defendant, Connecticut Attorney Title Insurance Company.

Thomas A. Amato, Manchester, CT, for Defendant, Joel Sylvain.

Peter Rustin, Richard P. Weinstein, Weinstein & Wisser, P.C., West Hartford, CT, for Defendant, Laura B. Stewart.

### RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

DORSEY, Chief Judge.

Plaintiff ("Mt. Airy") seeks a declaratory judgment that defendant Millstein's ("Millstein") professional liability insurance policy is void *ab initio*. Plaintiff moves for summary judgment. For the reasons set forth below, plaintiff's motion is granted.

## I. BACKGROUND FACTS

On January 3, 1994, Millstein applied to Mt. Airy for professional liability insurance through the Law Offices of Daniel J. Millstein. Millstein's secretary completed the application. Millstein signed it.

Millstein answered "No" to question 19 of the application, which inquires: [1]

Is the Applicant, its predecessor firms or any lawyer proposed for this insurance aware of any circumstance, act, error or omission or personal injury which may result in a claim against them?

____ Yes __x__ No. If yes, please complete Claim Information Supplement.

Millstein did not list any conduct on the claim information supplement.

Additionally, the application provides:

The undersigned represents that the statements set forth herein are true, complete and accurate and that there has been no attempt at suppression or misstatement of any material facts known, or should be known, and agrees that this application shall become the basis of any coverage and a part of any policy that may be issued by the company.

In June 1993, Millstein represented Thomas Tamoney, Jr. ("Tamoney") in refinancing a first mortgage held by ARCS Mortgage Corporation ("ARCS") on the Tamoney home. Millstein, a member of defendant Connecticut Attorney Title Insurance Company ("CATIC"), was responsible for issuing title insurance policies and acting as the closing attorney. He was responsible for receiving the proceeds from the refinancing mortgage, paying off ARCS and obtaining a release of ARCS mortgage lien.

After the professional liability policy was issued in 1994, Millstein was accused of negligent performance of legal services. CATIC sued Millstein, alleging negligent handling of the Tamoney refinancing and other clients' mortgages. Defendants Joel Sylvain and Laura B. Stewart also filed suit.

On May 12, 1994, Millstein entered a rehabilitation center for treatment of drug and alcohol addiction. After he completed the drug program, he surrendered his law license and operations of his law office ceased. On January 4, 1996, Millstein pled guilty to two counts of first degree larceny for the transactions involving defendants and others.

Plaintiff seeks a declaration of Millstein's insurance policy as void *ab initio* to vitiate any duty to indemnify and defend Millstein in the civil suits.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment shall be granted when "the pleadings, depositions, ... and admissions on file, ... show that there is no genuine issue as to any material fact and that the moving parties are entitled to judgment as a

---

**1.** Plaintiff contends that questions 14 and 15 were answered incorrectly as well. This ruling does not address the merits of these answers as unnecessary for the grant of summary judgment.

matter of law." Fed.R.Civ.P. 56(c). Movant must make this showing. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. A factual issue is "material" if it "might affect the outcome of the suit under the governing law...." *Id.* All reasonable inferences must be drawn in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513.

### B. *Rescission*

■ To void an insurance policy under Connecticut law, plaintiff must prove: "(1) a misrepresentation (or untrue statement) by the [insured] which was (2) knowingly made and (3) material to [the] decision whether to insure." *Pinette v. Assurance Co. of America,* 52 F.3d 407, 409 (2d Cir.1995).

#### 1. *"Misrepresentation"*

■ Plaintiff contends that Millstein's answer to question 19 misrepresented that he was not aware of "any circumstance, act, error or omission ... which may result in a claim against [him]." In particular, plaintiff asserts that the Tamoney transaction gave rise to circumstances that Millstein had reason to believe might result in a claim.[2] Defendants claim that plaintiff has not established that Millstein made a misrepresentation.

Millstein, as the closing agent in the Tamoney transaction, was responsible for receiving the proceeds from the second mortgagee, properly paying off ARCS and obtaining a release of ARCS mortgage lien. (Millstein Dep., April 18, 1995 at 65–68) ("Millstein Dep."). He deposited the $475,000 proceeds from Chapel Mortgage, the refinancing mortgagee, into his client trust fund account on June 17, 1993. (*Id.* at 68–69; Fleet Bank Statement, June 30, 1993). Defendants claim

that it is disputed as to whether Millstein paid off ARCS and obtained a release of its lien.

■ Millstein took the fifth amendment when asked whether he paid off the first mortgage. (Millstein Dep. at 69.) In a civil action, an adverse inference may be drawn from the refusal of a party to testify in the face of probative evidence against him. *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1557, 47 L.Ed.2d 810 (1976). However, invocation of the fifth amendment does not relieve a litigant from otherwise presenting proof in support of his burden. *United States v. 4003–4005 5th Ave.,* 55 F.3d 78, 82 (2d Cir.1995). As a result, "the decision to invoke the Fifth Amendment does not itself raise an issue of fact, precluding the Court from granting summary judgment, if the moving party has presented sufficient evidence to support the motion." *Nissho Iwai Am. Corp. v. Siedler,* 1995 WL 555699, at *1 (S.D.N.Y. Sept. 18, 1995); *4003–4005 5th Ave.,* 55 F.3d at 83. Consequently, if plaintiff has met its burden in presenting sufficient evidence that Millstein did not pay off the first mortgage by January 3, 1994, his invocation of the fifth amendment will not preclude summary judgment. Conversely, the adverse inference from Millstein's assertion of the fifth amendment would not suffice to show the facts are undisputed. It would not constitute evidence that ARCS was in fact paid.

Millstein testified that he was responsible for paying off the Tamoney's first mortgage in one lump sum. (*Id.* at 70.) If he had paid off the mortgage, the payment would have appeared on his client trust fund account statement. (Millstein Dep. at 69.) Between June 17, 1993 and January 3, 1994, no debit from the client trust fund account reflects a full payment of the first mortgage. (Fleet Bank Statements, June 30, 1993–January 31, 1994.)[3]

---

**2.** Plaintiff asserts that other clients' transactions give rise to misrepresentations. A knowing misrepresentation in relation to the Tamoney transaction is sufficient to grant rescission.

**3.** It is not clear whether the amount needed to pay off the first mortgage was $475,000, as referenced at deposition, (Millstein Dep. at 69), $451,250, referenced at the hearing on the guilty plea, (Tr. of Guilty Plea at 2), or $448,194, the original amount of the mortgage. However, no disbursement of any sum comparable to these amounts was made from the client trust fund account between June 17, 1993 and January 3, 1994.

Rather than paying off the mortgage in a lump sum, Millstein continued to pay the Tamoney's monthly mortgage payment on the ARCS mortgage. Although he asserted the fifth amendment at his deposition when asked whether this was true, (Millstein Dep. at 71), the client trust fund account statement shows that in July, August, September, and December of 1993, Millstein wrote checks for $4,365.63, the amount of the monthly payment for Tamoney's ARCS mortgage. A copy of the July check is made out to ARCS, references the Tamoney account, and is signed by Millstein. (Fleet Bank Check # 1003.)

Furthermore, Millstein admitted at his guilty plea hearing that he continued to make payments on the old mortgage in order to conceal the fact that he took the funds from the second mortgage and spent it. (Tr. of Guilty Plea, January 4, 1996 at 2 and 9.)[4]

These undisputed facts, taken as a whole, clearly indicate that as of January 3, 1994, Millstein had not paid off the Tamoney mortgage in full. No reasonable jury could find otherwise. Thus, there was a "circumstance, act, error or omission" which might result in a claim for mishandling funds.

### 2. *"Knowingly Made"*

■ Defendants argue that Millstein's misrepresentation was not "knowing." An insured must know he is making a false statement if an insurance contract is to be voidable. "[A]n insured makes a knowing misrepresentation only when he submits an answer to a question in the application other than that which he has *reason to believe* is true." *Lewis v. John Hancock Mutual Life Ins. Co.,* 443 F.Supp. 217, 218 (D.Conn.1977) (emphasis added). Rescission will not be granted if the misrepresentation was "innocent," i.e., made by ignorance, mistake or negligence. *Pinette,* 52 F.3d at 410; *see Middlesex Mut. Assurance Co. v. Walsh,* 218 Conn. 681, 691–92, 590 A.2d 957, 963 (1991). A misrepresentation will not be found if the

insured was "justifiably unaware of [the answer's] falsity, had no actual or implied knowledge of its existence, and was not guilty of bad faith, fraud or collusion." *Lewis,* 443 F.Supp. at 218.

No genuine dispute exists that as of January 3, 1994, Millstein had not paid off the ARCS mortgage in full and had signed at least one check in July payable to ARCS for the monthly Tamoney mortgage payment. It cannot be said that he was justifiably unaware of the statement's falsity. Millstein clearly had reason to believe that a claim might result from his failure to pay off Tamoney's ARCS mortgage.

■ Defendants claim that because Millstein testified that he did not check the application for accuracy before he signed it, (Millstein Dep. at 162), a disputed issue of fact exists as to whether the answer was knowing. This argument is unavailing. An insured's failure to read the application before signing does not sustain a claim of negligent misrepresentation:

> Under Connecticut law ... a person may not claim that a misrepresentation is "innocent" solely because the person failed to read the application before signing it. "The law requires that the insured shall not only, in good faith, answer all the interrogatories correctly, but shall use reasonable diligence to see that the answers are correctly written." *Ryan v. World Mut. Life Ins. Co.,* 41 Conn. 168, 172 (1874).... Thus ... an applicant for insurance has the affirmative duty "to inform himself of the content of the application signed by him, under penalty of being bound by the representations as recorded therein." 7 George J. Couch, Cyclopedia of Insurance Law § 35:231, at 358 (2d Ed.1985).

*Pinette,* 52 F.3d at 410. Therefore, Millstein's failure to read the application does not preclude a finding that his misrepresentation was knowing.

---

4. No objection was filed to plaintiff's motion to supplement the record with a supplemental Local Rule 9(c)(1) statement of material facts not in dispute following Millstein's guilty plea. Statements made in the course of a guilty plea, later withdrawn, or a plea of nolo contendere, are

generally inadmissible. *See* Fed.R.Crim.P. 11(e)(6). However, Millstein did not plead nolo contendre, nor has the court been informed that he withdrew his plea. Thus, Millstein's plea statements would be an admission by a party-opponent. *See* Fed.R.Evid. 801(d)(2).

Defendants also assert that a disputed issue of fact exists as to whether Millstein's answer was knowing because he testified that, before treatment, he was in a drug and alcohol-induced "fog" due to his addiction. (Millstein Dep. at 120.) Millstein's voluntary use of drugs and alcohol cannot support a claim that Millstein's misrepresentations were due to ignorance, mistake or negligence. Even if Millstein were in a "fog," he still had knowledge from which he could determine that his representations were clearly false. He should have known his answer was false. An applicant must use reasonable diligence in ensuring that the answers are correct.

### 3. *Materiality*

Defendants also claim that plaintiff has not shown that Millstein's answer to question 19 was material. Information in an insurance application that becomes a part of the policy is material. *Continental Casualty Co. v. Bank of Southeastern Connecticut, et al.,* Civil No. 2:91CV326 (PCD), slip op. at 2, (D.Conn, June 22, 1995); *Guariglia v. John Hancock Life Ins. Co.,* 139 Conn. 54, 57, 90 A.2d 162, 163; *State Bank & Trust Co. v. Connecticut Gen. Life Ins. Co.,* 109 Conn. 67, 70, 145 A. 565 (1929). In the instant case, the application provided that "this application shall become the basis of any coverage and a part of any policy that may be issued by the Company." Thus, Millstein's answer to question 19 is material.

### III. *CONCLUSION*

Accordingly, there is no genuine issue as to whether Millstein made a knowing misrepresentation to plaintiff on his application for insurance. Plaintiff's motion for summary judgment (doc. 38) is granted, and Millstein's Mt. Airy professional liability policy, effective January 25, 1994 to January 25, 1995 is declared void *ab initio.*

SO ORDERED.