The CENTENNIAL LIFE INSURANCE COMPANY, Plaintiff,

v.

Anthony NAPPI, Defendant.

95–CV–1706.

United States District Court, N.D. New York.

Feb. 25, 1997.

Budd Larner Gross Rosenbaum Greensberg & Sade, Short Hills, NJ, for Plaintiff; Dennis M. Reznick, of counsel.

Richard N. Bach, Utica, NY, for Defendant.

## MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

The plaintiff in this action, The Centennial Life Insurance Company ("Centennial"), alleges that the defendant Anthony Nappi ("Nappi") fraudulently misrepresented his birth date to Centennial in order to collect disability benefits [1] to which he was not entitled. The plaintiff further alleges that Nappi breached the contract with Centennial, and breached the covenant of good faith and fair dealing. Centennial seeks restitution of the amount it allegedly overpaid to Nappi, prejudgment interest on that amount, costs, attorney's fees, punitive damages, and a declaration that its obligation to pay disability benefits to Nappi terminated on March 22, 1993. Nappi answered the complaint and counter-claimed alleging that he is due disability benefits up to age 70. Presently before the court is plaintiff's motion for summary judgment. Oral argument was heard on October 24, 1996. The court reserved decision.

### FACTS

The following facts are undisputed by the parties. Defendant Nappi, a psychiatrist, applied for a group disability insurance policy which Centennial offered to members of the American Psychiatric Association. On his application, Nappi represented that he was born on March 22, 1928, in New York City. Centennial issued a policy to Nappi and he was thereafter covered by the disability insurance policy. On March 7, 1988, Nappi was injured when he fell down the stairs in a mental health facility where he was working. As a result of this fall, Nappi became permanently disabled.

Nappi then filed a claim for benefits under the disability insurance policy. As was provided for by the policy, Centennial paid Nappi benefits of $5,000 each month beginning in March 1988. The policy which was in effect when Nappi became disabled provided that for insureds injured at age 50 or less benefits would be paid for life; for insureds injured at age 50 through 63 benefits were payable to age 65; and for insureds injured at ages 64 through 69 benefits were paid for 12 months.[2] The policy further provided that the insurance coverage terminated upon attainment of age 70.

Several months prior to March, 1993, the scheduled termination date of Nappi's benefits, Ms. Dianna Benjamin [3] notified Nappi of the upcoming termination. Ms. Benjamin was an employee of Professional Risk Management Services, which at that time administered the Centennial policy.

In January of 1993, Nappi notified Centennial that his birth year was in reality 1938, and requested a new application form to "correct" the error.[4] Shortly thereafter Nappi applied to the Supreme Court of New York County for an order directing The City of New York Department of Health, Bureau of Vital Statistics, to issue a certificate of delayed registration of birth reflecting a birth date of March 22, 1938. The City opposed Nappi's application. On October 12, 1993, the Supreme Court granted that appli-

---

1. Whether or not Nappi was actually totally permanently disabled is not at issue in this action. Accordingly, for the sake of simplicity, the court will refer to Nappi as being disabled, rather than as being allegedly disabled.

2. Based upon a birth date of March 22, 1928, Nappi was age 59 at the time he became disabled and began receiving disability benefits under the policy. Thus, according to the policy provisions, Nappi's benefits would terminate at the time he reached age 65. Also based upon a birth date of March 22, 1928, Nappi's benefits would terminate on March 22, 1993.

3. During 1992 and 1993 when Ms. Benjamin was administering the policy under which Nappi was insured, some sort of personal relationship developed between Ms. Benjamin and Nappi. Ms. Benjamin asserts that she "befriended" Nappi and they had a "telephone friendship;" however, the nature and extent of their relationship remains unclear.

4. Under the policy a birth date of 1938 and a disabling injury in 1988 would entitle the insured to lifetime benefit payments.

cation. *See* Schlesinger, J., *Nappi v. City of New York, Dep't of Health, Bureau of Vital Statistics,* Index No. 112833/93 (N.Y.Sup.Ct. Oct. 12, 1993) (Matthews Aff. Ex. Q).

Nappi provided several declarations and items of documentation to the Supreme Court, upon which that court relied in making its decision. *See id.* First, Nappi represented to the Supreme Court that he received a new certified copy of his birth certificate for a new employer. *Id.* At that time he noticed that his birth date was listed as March 22, 1928, and he believed that the birth year contained a typographical error. *Id.* In a sworn affidavit Nappi represented to the court that upon noticing the discrepancy he spoke with several older living relatives[5] who explained to him that exactly ten years to the day before his birth, his mother had given birth to another boy, also named Anthony. *Id.* This boy died as an infant in Italy. *Id.* Nappi's aunt corroborated this story by sworn affidavit. *Id.*

Nappi's sister, who was born in 1930, stated that Nappi is her younger brother and he was born in 1938. *Id.* Also submitted to the Supreme Court were affidavits from Nappi's friends from grammar school, high school, and college who stated that they knew Nappi and knew him to be of their age. *Id.* Nappi submitted school records from elementary and secondary school which reflected a 1938 birth year. *Id.* Nappi provided a certificate of baptism which stated that he was baptized on May 27, 1938, and a marriage certificate from 1961 which provided that he was born in 1938. *Id.*

Based upon this information, the Supreme Court granted Nappi's application. *Id.* On December 29, 1993, the Bureau of Vital Statistics issued a Certificate of Birth, Delayed Registration, for one Anthony Nappi, born at home in New York City on March 22, 1938.

Nappi then provided this birth certificate to Centennial, which had continued to make disability payments of $5,000 monthly to Nappi based upon his representation that his

true birth year was 1938. Centennial continued these monthly payments through August 1994.

Paradoxically, this recitation of the undisputed facts presents a straightforward scenario, obscuring the underlying tangled web woven by Nappi. Centennial has presented the following facts for the record, apparently sufficiently untangling the web so that Nappi has either admitted the facts presented or asserted his Fifth Amendment right not to incriminate himself.

In November 1993, Centennial took over administration of the policy from Professional Risk Management Services. Sometime thereafter, it became evident to Centennial that something was amiss with Nappi's disability benefits. An investigation uncovered the following evidence indicating Nappi's true year of birth was 1928.

A Certificate and Record of Birth dated March 26, 1928, shows the birth of one Anthony Nappi, on March 22, 1928, to Angelina and Generoso Nappi in the City of New York.

A Certificate of Baptism[6] dated February 7, 1961, certifies that Anthony Nappi, son of Angelina and Generoso Nappi was baptized by Reverend J. O'Brien on May 27, 1938, at St. Mary's Church in Utica, New York. The Certificate, signed by Assistant Pastor John Cavanaugh, reflects that the record of baptism appeared on page 127 of Volume 6 of the church records. In a sworn affidavit, Father Robert Yeazel, Vicar for Priests in the Syracuse Diocese of the Roman Catholic Church, stated that he reviewed the records of the Chancery Office and found that there was not a Father J. O'Brien assigned to St. Mary's Church in Utica, New York, in 1938. Father Yeazel further stated that after a review of the Syracuse Diocese records, he has determined that there was never a priest named John Cavanaugh in this Diocese.

Also by sworn affidavit, Father Richard O'Neil stated that there is no record of issuance of a Baptismal Certificate to Anthony

---

5. Nappi's parents are deceased.

6. This Certificate of Baptism is the one Nappi presented to the Supreme Court in support of his

petition for a certificate of delayed registration of birth establishing a March 22, 1938, birth date.

Nappi on February 7, 1961.[7] Father O'Neill has been Pastor of St. Mary's Church in Utica, New York, since 1991. Father O'Neill further determined that there is no Volume 6 of the records of St. Mary's Church and that Father J. O'Brien was not assigned to St. Mary's Church in 1938. Father O'Neill, a member of the Syracuse Diocese of the Roman Catholic Church since 1954, has never heard of a Priest in the Syracuse Diocese named John Cavanaugh.

Nappi's transcript from Proctor High School, Utica, New York, reflects a 3–22–28 birth date.[8] Nappi's Transcript/Academic Record from Utica College of Syracuse University reflects a birth date of 3/22/28.[9] Nappi's academic record from the University of Bologna, Bologna, Italy, where he received his medical degree in 1969, shows a 22 March 1928 birth date. A handwritten Application for Appointment to Full-time Staff at Marcy State Hospital shows a March 22, 1928 birth date. An employee's physical examination of Nappi performed on September 28, 1972, shows Nappi's age to be 44 and his birth date to be March 2, 1928.[10] Another employee's physical examination report dated six years later, September 7, 1978, reflects Nappi's age to be 50 and his birth date to be March 22, 1928.

On May 15, 1973, Nappi applied for appointment to the medical staff at St. Elizabeth Hospital, Utica, New York. The application form, which is handwritten and signed by Nappi, states that he was born on March 22, 1928. A letter by Walter N. Garger, M.D., an orthopedic surgeon who examined Nappi on November 16, 1988, for the State Workers Compensation Board, reports that

Nappi was 60 years of age at the time of the examination. In reporting on an examination he conducted on July 24, 1991, Dr. Garger again states Nappi's age as 63 years old at the time of the examination. A Health Insurance Claim Form filed at the time of Nappi's accident, signed by Nappi indicates that his date of birth is March 22, 1928. Dr. Reinhard E. Bothe, M.D., reports on January 13, 1992, that Nappi's birthdate is March 22, 1928.

In a sworn and witnessed "Claimant's Statement" Nappi related that his birth date was March 22, 1928. Finally, Nappi's own Curriculum Vitae declares that he was born on March 22, 1928, in New York City.

### DISCUSSION

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct.

7. Father O'Neill also reviewed the baptismal records of St. Mary's Church and determined that on May 15, 1938, only one person, who was not Anthony Nappi, was baptized. Apparently Father O'Neill was confused and checked the wrong date, since the Certificate of Baptism being refuted shows a baptismal date of May 27, 1938. This is immaterial to the other information in the affidavit.

8. Although the transcript is unclear as to when Nappi graduated, the court notes that an individual born in 1928 who graduates from high school at age 18 would have graduated in 1946. An individual born in 1938 would have graduated at age 18 in 1956.

9. Nappi attended Utica College from 1949 through 1957. A college entry date of 1949 is consistent with a 1928 birth year (college entry at age 21). However, had Nappi been born in 1938, as he represented to Centennial, he would have been eleven years old when he began attending Utica College.

10. The court notes that the report reflects the incorrect birth day. There is no dispute, however, that Nappi was born on March 22. The only possible dissension concerns the birth year being 1928 or 1938.

1348, 1355–56, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the initial burden of demonstrating an absence of a genuine issue of material fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. at 1356. At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. at 2511; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. at 1356. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. at 1356.

■ The only factual issue material in this case is whether Nappi was born in 1928 or 1938. If Nappi was born in 1928, then he misrepresented his birthdate to Centennial and therefore breached the disability insurance policy contract. If that is the case, then Centennial was entitled to terminate Nappi's disability benefits according to the terms of the policy, and any payments made after the termination date due to Nappi's misrepresentation would constitute overpayments for which Nappi is liable. On the other hand, if there is a genuine issue of material fact as to Nappi's birthdate, then summary judgment is inappropriate.

Centennial asserts that it has met its initial burden of demonstrating an absence of a genuine issue of material fact as to Nappi's actual date of birth. Centennial has presented high school, college, and medical school records which reflect a birth year of 1928. Moreover, a birth year of 1938 is inconsistent with Nappi's college records, in that Nappi would have entered Utica College in 1949 at age eleven had he been born in 1938. Employment applications for Marcy State Hospital and St. Elizabeth's Hospital, completed by Nappi, show a 1928 birth year. Physicians reports from 1988, 1991 and 1992 state either a birth year of 1928 or an age compatible with a 1928 birth year. Nappi's health insurance claim form from his March 1988 disabling accident reflected a 1928 birth year. Moreover, Nappi's own Curriculum Vitae declares a birth date of March 22, 1928. Nappi does not dispute that all the above records state that he was born in 1928. Additionally, Nappi admits that he will attain the age of 70 years old on March 22, 1998. (Ans. ¶ 9.) Attainment of age 70 in 1998 is consistent with a 1928 birth year.

The only facts before this court which contradict a 1928 birth year are those provided to the New York Supreme Court in support of Nappi's application for a new birth certificate. Many of these facts have been refuted by Centennial. For example, no reasonable juror could conclude that the baptismal certificate provided by Nappi was authentic, given sworn testimony from officials of the Church that the pastors who supposedly baptized Nappi and provided the Certificate of Baptism were nonexistent and the volume from which the recorded baptism was transcribed was nonexistent. Similarly, school records provided by Nappi to the Supreme Court were impugned by the school records uncovered by Centennial which Nappi admits reflect a 1928 birth year. Additionally, Nappi represented to the Supreme Court that the birth certificate was needed for an employment application, at a time when Nappi was totally permanently disabled and was collecting disability benefits under the policy issued by Centennial.

Lastly there are the unimpugned affidavits of Nappi's sister and aunt, affidavits of Nappi's friends, and a marriage certificate. Based upon the plethora of evidence presented showing Nappi to have been born in 1928 and the scintilla of evidence to the contrary, no reasonable jury could conclude that Nappi was indeed born in 1938. Thus, absent any other issue, it is evident that Nappi breached the contract for disability insurance with Centennial by misrepresenting his age, and Centennial would entitled to summary judgment. Nappi raises two other issues in opposition to summary judgment.

Nappi first argues that Ms. Benjamin represented to him that his disability benefits were payable to age 70 and she suggested to

him that he misrepresent his age to Centennial in order to extend his benefits. By sworn affidavit he stated by any actions he took regarding his policy were at the "suggestion, instructions and request" of Ms. Benjamin. Nappi argues that because Ms. Benjamin was an agent for Centennial he should not be held responsible for any misrepresentation and resultant overpayment. Nappi has invoked his Fifth Amendment rights with regard to any actions he took concerning the disability policy. Nonetheless, Nappi argues that it is now necessary to reopen discovery so that he might unearth further evidence that Centennial agents represented to him that his benefits should continue until age 70, or instructed him to misrepresent his age in order to extend his benefits.

Centennial submitted the affidavit of Ms. Benjamin, in which she stated that she was "unaware of any reason that would justify extending Dr. Nappi's disability benefits to age 70, and have never advised either Dr. Nappi or [his attorney] that Dr. Nappi was entitled to such benefits.... I never advised Dr. Nappi to falsify any record whatsoever and would not do so since that would be illegal and fraudulent." (Benjamin Aff. ¶¶ 16, 20.)

■ Centennial argues that the court should make a negative inference based upon Nappi's invocation of the Fifth Amendment as to his conduct relating to the disability policy. It further argues that Nappi's request to reopen discovery is a misuse of the Fifth Amendment privilege.

■ A party to a civil action may refuse to testify under the privilege of the Fifth Amendment; however, an adverse inference may be drawn against that party. *Baxter v. Palmigiano*, 425 U.S. 308, 320, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976); *United States v. 4003–4005 5th Ave.*, 55 F.3d 78, 83 (2d Cir. 1995). An adverse inference against the party invoking the Fifth Amendment by itself is insufficient to establish the absence of a genuine issue of material fact. *Mt. Airy Ins. Co. v. Millstein*, 928 F.Supp. 171, 174 (D.Conn. 1996). Thus, once the moving party sets forth sufficient evidence to meet its burden of establishing the absence of a genuine issue

of material fact, *see id.*, the nonmoving party must come forward with "specific material contradicting his adversary's presentation" in order to withstand summary judgment, *Securities & Exch. Comm'n v. Benson*, 657 F.Supp. 1122, 1129 (S.D.N.Y.1987). *See 4003–4005 5th Ave.*, 55 F.3d at 83 ("claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation").

■ A trial court must decide a motion precipitated by a civil litigant's invocation of the Fifth Amendment based upon "the precise facts and circumstances of each case." *See id.* at 85. It is within the discretion of the trial court to devise remedy to accommodate all interests at stake in the litigation and to assure that invocation of the Fifth Amendment, or later attempts to withdraw the privilege, does not result in obstruction of the case or unfairness to the other party. *See id.* at 84–85. Moreover, where civil litigant uses the protection of the Fifth Amendment as a shield to protect himself from discovery, then attempts to reopen discovery to obtain evidence to contradict his opponent's position, the court may deny further discovery to prevent an abuse of the privilege and grant summary judgment. *Benson*, 657 F.Supp. at 1129–30 ("[d]efendant chose his tactic of obstruction and assertion of the privilege and is bound by his choice").

The complaint in this case was filed on December 4, 1995. On May 7, 1996, the court entered a Uniform Pretrial Order setting a discovery deadline of September 15, 1996. On September 9, 1996, during a conference, the court orally stayed discovery pending a decision on the upcoming summary judgment motion. Defendant did not request any discovery whatsoever up until the time of the stay, nor did he request limited discovery prior to the return date of the motion in order to respond to the motion. To say that Nappi's current request for discovery is untimely is an understatement. Moreover, Nappi seeks discovery regarding the circumstances of his actions concerning the disability policy, while at the same time

invoking the Fifth Amendment privilege, thus effectively refusing Centennial the right to discovery, regarding the very same circumstances. In other words, Nappi seeks to shield himself under the cloak of the Fifth Amendment while using it as a sword to defend against Centennial's summary judgment motion. To allow such abuse of the privilege would prejudice Centennial's rights and result in an unfair tactical advantage for Nappi, results which the Second Circuit has warned trial courts against. *See 4003–4005 5th Ave.*, 55 F.3d at 84–85. Therefore, the court finds that it is inappropriate to reopen discovery, and the summary judgment motion will be decided on the facts currently before the court.

As previously discussed, Centennial has set forth a myriad of evidence which shows that 1928 is Nappi's true year of birth. In addition, the court will draw an adverse inference regarding the evidence tending to establish 1938 as Nappi's birth year because Nappi's invocation of the Fifth Amendment forecloses Centennial from questioning Nappi regarding that evidence. Centennial has further set forth evidence, the sworn affidavit of Ms. Benjamin, showing that there was no collusion by Ms. Benjamin in the fraud perpetrated by Nappi upon Centennial. The court will therefore draw an adverse inference regarding Nappi's relationship with Ms. Benjamin and his allegation of collusion with Ms. Benjamin to defraud Centennial, based upon Nappi's invocation of the Fifth Amendment and consequent refusal to testify regarding the circumstances surrounding the alleged collusion.

The court finds, therefore, that Centennial has met its burden of establishing an absence of a genuine issue of material fact. In other words, Centennial has established that Nappi was born in 1928, and his misrepresentation to Centennial constituted a breach of the disability policy contract.

■ Second, Nappi argues that a genuine issue of fact exists as to whether the disability policy is ambiguous in its terms. Nappi's argument is that the provision for termination of insurance at age 70 is inconsistent with termination of benefits at age 65. Nappi argues that the policy should be read to provide disability benefits to him until age 70, rather than age 65. Further, Nappi argues that the policy is ambiguous in that the heading for the benefit period chart refers to "sickness and injury" rather than "sickness or injury." Centennial counters that the policy is unambiguous on its face.

The policy provides that a member's insurance terminates, *inter alia*, on "[t]he Policy Anniversary Date coinciding with or next following his attainment of age 70. (This is not applicable to Plan B)." (Matthews Aff. Ex. S.) Nappi states that it is unclear whether he is covered under Plan A or Plan B. Determination of whether Nappi is covered under Plan A or Plan B is unnecessary to solve the ambiguity question. When the insurance terminates and when an insured's benefits terminate are two completely different matters. That insurance coverage terminates at a different time than when benefits cease is inconsequential and certainly does not create an ambiguity. In a case such as this, where the insured becomes disabled at age 59, benefits continue until age 65. Presumably the individual remains disabled and does not return to work and thus would not qualify for further benefits even in the case of an additional disabling injury or sickness. In another case, however, where the insured is not disabled and continues to actively work, coverage continues until age 70. Thus, for example, if that insured became disabled at age 65, benefits would be payable for one year under the terms of the policy. This court will not read an ambiguity into a contract when the contract is clearly unambiguous on its face.

■ Nappi's conjunctive versus disjunctive argument also must fail. "Injury" is defined in the policy as an injury sustained in an accident which occurred while insurance coverage was effective and which results in total disability within 90 days of the accident. Sickness is defined as an illness or disease which begins while insurance coverage is effective. Sickness is defined to also include an injury, as previously defined except that the disability begins more than 90 days after the accident. Based upon these definitions, an insured cannot have both an "injury" and a "sickness" at the same time. Thus, Nappi's

argument that because he has an injury and not a sickness, i.e., he does not have "injury *and* sickness," the policy is ambiguous in that the Maximum Benefit Period for Total Disability Due to Sickness and Injury would not apply to him fails.

The disability insurance policy is unambiguous on its face. Nappi's attempts to invent ambiguities in the policy to create genuine issues of fact are unsuccessful.

## CONCLUSION

Centennial has established that there is no genuine issue of material fact and Nappi has failed to set forth specific evidence to show that there is a genuine issue for trial. Nappi attempted to and did in fact commit fraud in misrepresenting his age to Centennial. Centennial is therefore entitled to summary judgment.

According to the terms of the policy, Nappi, who became disabled at age 59, was due benefit payments until he reached age 65. Nappi reached age 65 on March 22, 1993. Centennial's obligation to pay disability benefits to Nappi terminated on March 22, 1993. However, Centennial continued to make payments until August 1994 based upon Nappi's misrepresentation of his age. Therefore, Centennial overpaid benefits to Nappi in the amount of $85,000. Nappi is liable to Centennial for those overpaid benefits. In addition, Centennial expended $2,220.20 to uncover Nappi's misrepresentation.

Accordingly, it is

ORDERED that

1. Plaintiff Centennial Life Insurance Company's motion for summary judgment is GRANTED;

2. Defendant Anthony Nappi's counterclaim is DISMISSED with prejudice;

3. Defendant Anthony Nappi's true date of birth is March 22, 1928;

4. Plaintiff Centennial Life Insurance Company's obligation to pay disability benefits to defendant Anthony Nappi terminated on March 22, 1993; and

5. judgment shall be entered in favor of the plaintiff and against the defendant in the sum of $95,070.02, which represents $85,000.00 money overpaid, $2,220.20 costs, and $7,849.82 [11] interest from August 1994 until the date of the judgment.

IT IS SO ORDERED.

---

11. Interest calculated at the rate of nine percent. *See* N.Y.C.P.L.R. § 5004 (McKinney 1992).